IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| LETICIA ROBERTS, on behalf of herself and others similarly situated;<br><br>                Plaintiff,<br>   v.<br><br>TONY THOMPSON, in his official capacity as Black Hawk County Sheriff; and BLACK HAWK COUNTY;<br><br>              Defendants. | Case No. ___6:24-cv-2024_____<br><br>**COMPLAINT**<br><br>**(JURY DEMANDED)** |

## I.  PRELIMINARY STATEMENT

1.    When releasing people from the Black Hawk County Jail, the Black Hawk County Sheriff's Office straps individuals with debt that, for many, makes a disruptive period of incarceration even more damaging. While those individuals attempt to get their lives back in order, Sheriff Tony Thompson (the "Sheriff" or the "Department") has implemented a policy that demands payment to the jail for "room and board" at a rate of $70 per day plus $25 in administrative fees per booking (collectively referred to as "jail fees"). To compel payment of these fees, the Department presents individuals serving a sentence at the jail with a confession of judgment prior to being released from the jail. If that same individual has money on their person upon booking, the Sheriff seizes that money and applies it against their "debt." After release, the Sheriff demands payment under the terms of the confession of judgment, without going through the statutorily required judicial processes. The Department uses the seized money to fund, among other things, a gun range for use by its employees, at times outfitted with cotton candy and ice cream.

2.     The scheme developed by the Sheriff—on behalf of Black Hawk County (the "County") and ratified by the County—relies on the confessions of judgment to pocket money without any process whatsoever and without a judge reviewing the claims by the Sheriff, as is required by Iowa law and the U.S. Constitution. The scheme results in collections for Defendants of approximately $300,000 annually from individuals released from the Black Hawk County Jail.

3.     Defendants' policies, practices, and customs deny individuals due process required by Iowa law and the U.S. Constitution; violate the impartiality requirement of the Due Process Clause of the Fourteenth Amendment; and offend long-standing constitutional requirements for confessions of judgment. Accordingly, Defendants' policies, practices, and customs are unconstitutional, and their use of confessions of judgment to impose and collect jail fees is unlawful.

## II.     JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

5.     This Court has personal jurisdiction over Defendants because Defendants are domiciled in the State of Iowa and the deprivation of Plaintiff's rights arises out of and relates to Defendants' official duties in the State of Iowa.

6.     Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district.

## III.     PARTIES

7.     Plaintiff Leticia Roberts is a resident and citizen of the State of Iowa. She served two different sentences for operating a motor vehicle while intoxicated in January 2022, May

2022, July 2022, and August/September 2022. Upon information and belief, she was invoiced a total of $730 in jail fees for the time she was detained at the Black Hawk County Jail. The Department used two confessions of judgment to impose and collect these fees without a court order. She brings this action on behalf of herself and others similarly situated.

8.     Defendant Tony Thompson is the elected Sheriff of Black Hawk County and is responsible for formulating, executing, and administering the laws, customs, and practices that comprise the Department's administration of jail fees. The Sheriff is an employee and final policymaker for the County and the Department in all matters concerning the Black Hawk County Jail and all actions complained of herein. The Sheriff approved and/or ratified the unconstitutional policies, practices, and customs guiding Defendants' unlawful acts, and approved and/or ratified the actions and omissions of the Sheriff's employees in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions. The Sheriff is sued in his official capacity.

9.     Defendant Black Hawk County is a political and administrative subdivision existing and operating under the laws of the State of Iowa. Black Hawk County is the fifth largest county in Iowa with a population of 130,471. The County has statutory authority to fund, maintain, and operate the Black Hawk County Jail. In nearly all matters concerning the Black Hawk County Jail, the County acts through its policymaker, the Sheriff. The County also has the statutory authority under Iowa Code section 356.7 to allocate jail fees collected by the Department. The County is the employer of all employees of the Department and has a legal responsibility to operate according to the laws of the United States and the State of Iowa, including, but not limited to, the U.S. Constitution. At all times relevant to the facts alleged herein, the County was responsible for assuring that the actions, omissions, policies, procedures,

practices, and customs of its employees complied with the law, including the U.S. Constitution. Through its acts and omissions, the County adopted, ratified, and approved the policies, practices, and customs challenged herein.

## IV.    STATEMENT OF FACTS

10.    Plaintiff Leticia Roberts is a single mother of three young children. Because she lives on a fixed income, she cannot afford the $730 the Sheriff claims that she owes. Nevertheless, since a Sheriff's deputy visited her home in or around October 2022, Ms. Roberts has ensured she makes regular payments to—as the deputy put it to her—"keep them off her back" and to minimize her number of interactions with law enforcement.

11.    Ms. Roberts brings this action on behalf of herself and all individuals who have been released, or will be released, from the Black Hawk County Jail and have signed, or will sign, a confession of judgment for jail fees since May 14, 2022; and whose jail fees have been paid, are being paid, or will be paid under a confession of judgment absent a court order.

12.    The Sheriff uses a template confession of judgment form as a means of compelling payment of jail fees without any judicial review.

13.    If an individual cannot pay, the Sheriff files these confessions of judgment with the Black Hawk County Clerk of Court to initiate a civil "reimbursement claim." Once the clerk receives the filing prepared by the Department and signed by the prosecutor's office, the filing is administratively approved in the clerk's office without a judge ever seeing it. Unlike any other civil proceeding, individuals against whom such reimbursement claims are filed are not formally served with a summons. Nor do they receive a hearing.

14.    As a result, the people who purportedly owe these fees have no notice and no opportunity to be heard; thus, they cannot mount a defense against the imposition of this debt.

They cannot plead their inability to pay, challenge the validity or amount of the charge, raise issues regarding the execution of the confession of judgment, present arguments that the fine is excessive, assert that other debts have priority, or in any way challenge the confession of judgment.

15.     The Sheriff does not follow the process set forth in Iowa Code section 356.7, which governs jail fees and requires the filing of a civil reimbursement claim in order to collect. Instead, the Sheriff demands payments under the terms of a confession of judgment without filing a reimbursement claim with the court.

16.     The Department's use of confessions of judgment ensures that no judge ever reviews the reimbursement claims. As the Sheriff has acknowledged, the "room and board [fees] are generally the fees that judges are willing to waive." Thus, the Department intentionally uses confessions of judgment to bypass judicial review, enabling it to squeeze more "blood out of a turnip."

17.     This scheme has yielded significant revenue for the Sheriff and the County. According to public records, Defendants collected at least $590,217.36 in jail fees from July 10, 2021 to July 10, 2023.

18.     Through this policy, the Department and the County have been able to profit far greater from jail fees than other comparable counties in Iowa. During roughly the same period, Scott County (population: 174,270) collected about a fourth of the amount the Defendants collected ($152,389.00). Dallas County (population: 111,092) collected less than half ($257,556.50). Neither Johnson County (population: 157,282) nor Polk County (population: 505,255) collects jail fees at all. Linn County (population: 228,972) has stopped assessing jail fees to individuals released from its jail.

19.     The Sheriff estimates that the Department collects about $300,000 in jail fees every year. At one point in time, the Sheriff stated that the fund controlled by the Department from the collection of jail fees had $227,000 in it.

20.     Using the money individuals rely on to put food on the table, pay their rent, and afford other living expenses, the Department provides perks to employees and funds activities entirely unrelated to the treatment of individuals detained at the jail. Among other superfluous expenses, the Department has used the collected jail fees to fully fund the development and maintenance of the Raymond Range Training Facility (the "Raymond Range")—a gun range used by its employees and their families.

21.     The Raymond Range is a source of pride for the Sheriff. The Department has hosted events at the Raymond Range and has outfitted the premises with cotton candy machines, ice cream machines, and laser tag equipment for employees and their families to enjoy. The Raymond Range is also used to host training events for law enforcement throughout the region, which is yet another revenue generator for the Department.

22.     When the Black Hawk County Board of Supervisors (the "Board") tried to exercise minimal control over the Sheriff's use of the funds, the Department refused to collect jail fees. Faced with having to deposit the money in the County general fund for approved distributions, the Department simply stopped collection efforts until the Board relented.

23.     By evading judicial review and refusing to collect jail fees when control of the fund was wrested from it, the Department has made its aim clear: use any means necessary to avoid scrutiny of a program that is used to enrich the Department and its employees. This not only undermines the successful reentry of individuals recently released from jail and sows distrust in the community, but it also gives rise to a host of Due Process Clause violations.

**A. The Defendants Use Confessions of Judgment Procured Prior to Release to Compel Payments and Avoid Judicial Review.**

24.     When going through discharge procedures at the end of a sentence at the jail, before release, the Department invoices individuals $25 for booking fees and an additional $70 per day in "room and board" charges. The amount owed is payable directly to the Department, and the Sheriff demands payment immediately, rather than after obtaining the statutorily required judgment permitting the charges.

25.     Iowa Code section 356.7 gives county sheriffs the authority to "charge" jail fees and provides that such fees are collectible through a civil "reimbursement claim."

26.     Pursuant to the Sheriff's official Policy No. 1.2.1 on "Inmate Billing" (the "Policy"), the Sheriff utilizes confessions of judgment to collect the amount of jail fees purportedly owed for each jail stay. Pursuant to the Policy: "The Sheriff shall collect fees for room, board and booking from every sentenced inmate held in the custody of the Black Hawk County Jail."

27.     The current publicly available version of the Policy states:

> If the inmate does not pay off invoice at the time of his/her release, he/she will be informed of payment procedures and terms. At this time, the inmate will be asked to sign a completed Confession of Judgment agreeing to make scheduled payments to the Sheriff for the amount owed. The completed Confession of Judgment shall be maintained by the Reimbursement Coordinator until the debt is satisfied or legal action is taken to recoup the debt.

A true and correct copy of the Policy is attached hereto as **Exhibit A**.

28.     Prior to being released from the jail, as part of release procedures, inmates completing a term of incarceration at the Black Hawk County Jail are provided paperwork for signing. Among that paperwork is a "Room and Board Confession of Judgment" and a property release form. Individuals presented with the form do not have an opportunity to consult with an attorney before signing. Nor do they have an opportunity to negotiate the terms of the form.

29.     Aside from the limited text of the form itself, individuals who sign a confession of judgment are not advised as to the legal repercussions of a confession of judgment for jail fees, including whether they may still be released if they refuse to sign.

30.     The "Room and Board Confession of Judgment" document is a standardized form with several blank spaces for filling in set information, including: Name, ID#/DOB/SOC, ADDRESS, PHONE, Case #, Booking Fee, Number of billable days, Amount Paid (if any), Balance Due, and Adjusted Balance Due. There are also spaces for the amount of money an individual must pay each month toward their jail fees and when such payments should begin.

31.     When presented to an individual for signing, the fields in the confession of judgment form have already been filled out by an employee of the Department. The only blank field is for "Inmate Signature" and a notary attestation.

32.     The standard terms of the confession of judgment provide that the individual will pay $25 per month beginning the month following release. Only if an individual's purported debt to the jail is below $25 are the terms of the confession of judgment altered.

33.     If an individual has money on their person at the time they are booked or in their commissary account, the Department seizes that money and applies that amount to the jail fees purportedly owed. That amount is reflected on an individual's confession of judgment form as "Amount Paid."

34.     The Policy further states: "In the event a former inmate who has an outstanding balance and is in arrears returns to the jail, all money in his or her possession shall be credited towards the unpaid balance." Ex. A at 2.

35.     The current version of the "Room and Board Confession of Judgment" provides that the individual swears:

that I am the inmate named above, that I can read and understand the information contained in this document, that the above contact information is true and correct, that I owe the sums of money as indicated above, and that I confess judgment in the amount of the above balance due, in its entirety, and I understand that if judgment is entered against me, on this confession, I will further be liable for service of process fees and other court cost incurred in association with that judgment.

A true and correct copy of the standard confession of judgment form is attached hereto as

**Exhibit B**.

36.    The form also contains the following language:

I understand that if I do not timely make payments according to this payment plan, the Black Hawk County Sheriff's Office can file the necessary legal proceedings, in Small Claims or District Court, to collect unpaid amounts from me, and that in such proceedings this document will be filed as a Confession of Judgment of the above balance due. I understand that if such legal proceedings take place and judgment is entered against me, I will also be liable for service of process fees and Court costs of those proceedings.

I understand that this payment plan covers ONLY booking fees and room and board fees for the case(s) listed above, and that this does not affect, relieve, or replace other payment plans, if any, pertaining to this or other cases.

I understand that I may obtain a grand total balance owing on this plan by either calling 319-291-5029 or visiting the Black Hawk County Sheriff's Office in person.

*See* Ex. B.

37.    In or around 2020, the Sheriff amended the standard form to include the following language: "I further state that I am making and signing this sworn statement as my voluntary act and deed." *See* Ex. B.

38.    The form does not advise that by signing a confession of judgment, individuals agree that the Sheriff may file the confession of judgment and it will be entered by the court without any prior notice; that they waive any right to assert defects of jurisdiction, process, or procedure in the judgment so entered; that they waive any substantive defenses to the validity of

the debt or the confession of judgment itself; or, that by signing, they forego any right of judicial review.

39.     Neither the current form nor prior versions of the form provide any advisement that individuals signing the form have a right to due process under Iowa Code section 356.7 or the U.S. Constitution.

40.     No representative from the Department advises individuals of their rights to due process under Iowa Code section 356.7 or the U.S. Constitution.

41.     If an individual is unable to make payments toward the balance purportedly owed to the Sheriff, the Department attempts to make contact by using the contact information listed on the form. When contact attempts are made, notes of those attempts are handwritten on the confession of judgment form, which remain on the paper version of the form the Department maintains.

42.     Eventually, the Sheriff initiates civil reimbursement claims against individuals who have not paid.

43.     Upon information and belief, the Department does not maintain a policy that determines when and whether a reimbursement claim is initiated against an individual who cannot pay, has not paid, or is making payments but is unable to satisfy the purported debt.

44.     The Sheriff initiates civil reimbursement claims by using the confessions of judgment it previously prepared. The Sheriff files the reimbursement claims under chapter 676 of the Iowa Code, using the filing event "Confession of Judgment."

45.     Upon filing, a disposition is entered by a court clerk in the Sheriff's favor for the Confession of Judgment. No judge reviews the claim.

46.    The Sheriff then directs a praecipe to the Black Hawk County Clerk of Court. That praecipe requests that the Sheriff levy judgment on an alleged debtor, in this case individuals previously released from the jail.

47.    Once the praecipe is signed by the clerk, the Sheriff serves a notice of garnishment on the individual in person. This service event is the first instance in which an individual against whom a reimbursement claim has been initiated will learn of the filing. The Department then begins garnishing wages from the alleged debtor.

48.    There is no judicial review of the reimbursement claims filed by the Sheriff.

**B. Iowa Code Chapter 676 Is an Anachronistic Tool Ill-Suited for Jail Fees.**

49.    Rather than subjecting jail fees to judicial review, the Sheriff has chosen to employ a policy of using confessions of judgment to collect jail fees.

50.    Iowa's confession of judgment statute is codified as Iowa Code chapter 676. It has remained largely unchanged since it was first enacted in 1851.

51.    In full, Iowa's confession of judgment statute provides the following:

> **676.1. Judgment by confession—how entered**
> A judgment by confession, without action, may be entered by the clerk of the district court.
> **676.2. For money only—contingent liability**
> The judgment can be only for money due or to become due, or to secure a person against contingent liabilities on behalf of the defendant, and must be for a specified sum.
> **676.3. Statement**
> A statement in writing must be made, signed, and verified by the defendant, and filed with the clerk, to the following effect:
> 1. If for money due or to become due, it must state concisely the facts out of which the indebtedness arose, and that the sum confessed therefor is justly due, or to become due, as the case may be.
> 2. If for the purpose of securing the plaintiff against a contingent liability, it must state concisely the facts constituting such liability, and must show that the sum confessed therefor does not exceed the same.
> **676.4. Judgment—execution**

> The clerk shall thereupon make an entry of judgment in the clerk's court record for the amount confessed and costs, and shall issue execution thereon as in other cases, when ordered by the party entitled thereto.

52. "[T]he great majority of States prohibit . . . authorizations to confess judgment." Comment to Uniform Consumer Credit Code Sec. 3.306 (1978).

53. Indeed, in recognition of their fundamental unfairness, the Iowa Consumer Credit Code prohibits the use of confessions of judgment in almost all instances. Iowa Code § 537.3306 ("Unless executed after default on a claim arising out of a consumer credit transaction, authorization for a judgment by confession on that claim pursuant to chapter 676 is void. Any other authorization by a consumer for any person to confess judgment on the claim, whenever executed, is void.").

54. The confession of judgment has been described by the U.S. Supreme Court as "the loosest way of binding a man's property that ever was devised in any civilized country." *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 177 (1972) (quoting *Alderman v. Diament*, 7 N.J.L 197, 198 (N.J. 1824)).

55. Indeed, the U.S. Supreme Court has recognized that confessions of judgment are particularly egregious instruments in instances where the following conditions are present: "contracts of adhesion, [] bargaining power disparity, and [] the absence of anything received in return . . . ." *Swarb v. Lennox*, 405 U.S. 191, 201 (1972) (citing *D.H. Overmyer Co.*, 405 U.S. at 188).

56. The Department uses a standardized confession of judgment form with fixed terms.

57. The Department provides no opportunity to negotiate the terms of the confession of judgment at the time of its signing.

58.     As the Department jails the would-be signatories of the confessions of judgment and takes custody of their possessions, there is a great disparity of bargaining power between the parties to the confessions of judgment procured pursuant to the Policy.

59.     Individuals who sign the confessions of judgment receive no consideration in exchange for their acquiescence.

60.     Individuals who sign confessions of judgment have no opportunity to consult with counsel before signing the confessions of judgment.

**C. The Sheriff Uses the Policy to Avoid Judicial Review of Its Assessed Jail Fees and to Exert Control Over the 40% Fund.**

61.     Iowa Code section 356.7 refers to jail fees as "reimbursement" and permits county sheriffs to charge only the "actual administrative costs relating to the arrest and booking . . . , for room and board . . . , and for any medical aid . . . ."

62.     Under section 356.7, 60% of the amount collected for jail fees is allocated for specific expenditures while the remaining 40% is unallocated.

63.     Sixty percent of jail fees collected shall be allocated for specific purposes: "(1) Courthouse security equipment and law enforcement personnel costs. (2) Infrastructure improvements of a jail, including new or remodeling costs. (3) Infrastructure improvements of juvenile detention facilities, including new or remodeling costs. (4) Medical and prescription drug costs of inmates in jail." Iowa Code § 356.7(5)(a).

64.     In Black Hawk County, the 40% unallocated under the statute is deposited into a fund that is controlled by the Department. That fund, referred to as the "40% Fund," is used by the Sheriff to fund superfluous expenses entirely unrelated to the upkeep of the jail or the wellbeing of those in custody at the jail.

65. Through its policies, practices, and customs, the Department maintains control over the 40% Fund. Because no judge reviews the confessions of judgment filed by the Sheriff, the Department is the only entity that reviews such claims. It is also the entity solely responsible for collecting on these claims.

66. By maintaining this control, the Department, if it so chooses, can hold back money from the County by refusing to impose and collect jail fees.

67. In October 2022, the Sheriff did just that.

68. Beginning in or around 2019, concerns over the Department's expenditures under the 40% Fund and the Raymond Range were raised with the Board. In August 2019, the Sheriff sought to buy the land it had been leasing for the Raymond Range. When asked what authority there was for the Sheriff controlling the 40% Fund used to fund the Raymond Range, the Sheriff stated the Department's control is "based on past practice." The Board rejected a resolution to purchase the land. At that meeting, the Sheriff questioned "if the Board could take action to restrict the use of the property." Assistant County Attorney Peter Burk responded that the Board could.

69. The Raymond Range and the 40% Fund were again topics of conversation in a meeting of the Board on September 27, 2022. During that meeting, one member of the Board raised several questionable expenses drawn from the 40% Fund, including those for a cotton candy machine, an ice cream machine, and laser tag.

70. During that meeting, the Sheriff warned the Board that any action by the Board to take control of the 40% Fund would have unintended consequences, specifically that the Department would not prioritize collection of jail fees.

71. In the September 27th meeting, the Board voted on a resolution to place the proceeds from the 40% Fund into the County's general fund. That resolution failed.

72. On October 4, 2022, the Board again discussed the 40% Fund. In that meeting, the Board again voted on a resolution that would place all jail fees in the County's general fund and spent only as approved by the Board. The resolution was adopted on a 3-2 vote of the Board.

73. Following the October 4th meeting of the Board, the Sheriff sent an e-mail to the Board. The Sheriff's e-mail to the Board addressed the Board's measure and the position of the Department that it would not collect jail fees, instead focusing on "activities which directly benefit and affect" the Department.

| | |
|---|---|
| From: | Tony Thompson <tthompson@bhcso.org> |
| Sent: | Tuesday, October 4, 2022 12:08 PM |
| To: | Board of Supervisors Mail Box; Mary Leonard; Michael Treinen; Brian Williams |
| Cc: | Mark Herbst; Reinhard Boeschen; Nate Neff |
| Subject: | Resolution on Room and Board |

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Board:

Pursuant to today's resolution and absent any additional work sessions on the pragmatics of this resolution, these are the final issues that the board needs to be aware of. The sheriff's office won't be entering into an agreement to consider compensation for collection of room and board proceeds for a couple of very clear reasons which I will enumerate for you. The first reason is that our staff's time will be better directed at activities which directly benefit and affect the efforts of our agency and office as a whole. There are so many projects, and programs that the 40% which has been removed was supporting, it made sense to have our staff working on those collections. With that now removed,

74. In that e-mail, the Sheriff raised his concern that funding for the Raymond Range would be impacted by the Board's measure, stating that all expenses for the Raymond Range had been paid out of the 40% Fund.

Raymond Range Training Facility- You all are already aware that every construction and development cost associated with this training facility, as well as maintenance cost is/was paid for out of this 40%. The only hard costs now (beyond consumables and trash collection) is electricity, which we were working with your solar company on a quote for installing solar to completely offset that expense. That project is now likely dead. And, our internet costs through Mediacom, which obviously, we must have out there. We do contract with 12 outside agencies at $500 per year for access to this facility for use of the facility and that $6000 will offset the electricity costs and internet, but likely not the maintenance or consumables and certainly not any further construction projects there.

75.     The Sheriff asserted that there was $227,000 in the 40% Fund, which was the result of efforts by the Department to "tenaciously pursue[]" jail fees. This was required, the Sheriff posited, because "experience tells us that only about 30%–40% is actually collectable ('blood out of a turnip' mentality)."

> There is presently $227,000 in that 40% which will help stave off this dying policy move if you do nothing else with the money, which is not what was proposed. Be aware of the mistake that already was made. The flawed assumption is real, of all possible collections, experience tells us that only about 30%-40% is actually collectable ("blood out of a turnip" mentality). The rest of it is actually just bad debt that will eventually have to be written off or tenaciously pursued, which is what we would recommend and what we have done for the duration of my tenure as sheriff. This becomes much more tricky now that we will stop collecting. When I say we will stop, it doesn't mean we won't help whomever you put in charge of this effort. Obviously, there is benefit to our taxpayer, so we will not be any sort of roadblock to this effort. We will be helpful, as it is our nature to uphold the law and the board is well within the law to do what it has done here today.

76.     The Sheriff also admitted that if judges were to review the jail fees, they "are generally the fees that judges are willing to waive."

> Now, to qualify some of these assertions, here is the simple math. We are averaging approximately $300,000 in net collection each year. The board (I fear) is making an assumption that someone focusing full-time efforts can likely collect more than that. Perhaps, for a short time that will be true. But, we know what the present population is of the jail, and we know what the trend has been over the last 5 years and particularly since COVID. We have very few time serving inmates in our jail (we can't even use time servers to work as laundry and floor workers anymore because they don't exist in the facility). Even fewer are being required by the judges to repay room and board fees. In fact, if there are fees that are ever being waived by the courts, room and board are generally the fees that judges are willing to waive, so that population that we are able to collect from continues to decrease in size dramatically.

77.     The next week, effective October 10, 2022, the Sheriff stopped pursuing collections of jail fees.

78.     During the Board's meeting on October 25, 2022, the topic of the 40% Fund was again raised. At that meeting, the Black Hawk County jail administrator, Captain Nathan Neff of the Department, informed the Board that the Sheriff had stopped collections of jail fees.

79.     Following the Board meeting, the Sheriff again e-mailed the Board, copying a journalist from the local newspaper, the Waterloo-Cedar Falls Courier. In his e-mail, the Sheriff criticized the Board's questioning of expenses for the Raymond Range.

> **From:** Tony Thompson
> **Sent:** Tuesday, October 25, 2022 11:20 AM
> **To:** Board of Supervisors Mail Box; 'maria.kuiper@wcfcourier.com'
> **Subject:** Water and Coffee
>
> It has come to my attention that at today's board meeting, you were inordinately concerned about expenses at our Range Training Facility for bottled water and coffee. We charge somewhere (right now) between 11-13 outside law enforcement agencies $500 per year to use our facility. Out of that $5500-$6500 yearly revenue... target backers, targets, cleaning supplies, coffee, coffee filters, water, rags, toilet paper, and other items are purchased for the on-going costs of maintaining that facility. We even maintain a supply of bottled water for all of our emergency response vehicles

80.     The Sheriff warned the Board against continuing to "sensationalize" expenses for

the Raymond Range.

> understanding and considering one liner quotes suitable for printing in the press over factual information. This is exactly why we have asked for work sessions all along.... So that the board does not come off looking ignorant and we can better educate you on processes that obviously you know nothing about. If you want to continue to sensationalize the $1,000 or so in expenses that look nefarious to you, feel free to do so, but you will end up wearing the egg on your faces that you asked for. It may be more advisable to learn the process and procedures from our staff, listen before speaking, and understand before acting so as to not affirm your lack of knowledge and understanding publicly.
> Just my humble suggestion.
>
> Sheriff Tony Thompson
> Black Hawk County Sheriff's Office
> 225 East 6th Street
> Waterloo, Iowa 50703
> 319-291-2587
> tthompson@bhcso.org
> www.bhcso.org
>
> 

81.     The Sheriff then forwarded that e-mail to employees of the Department, including

Captain Mark Herbst, Deputy Sheriff Reinhard Boeschen, and Captain Neff, stating: "Sorry

guys, I couldn't help myself, but I just sent one more email to the board."

> **From:** Tony Thompson
> **Sent:** Tuesday, October 25, 2022 11:24 AM
> **To:** Mark Herbst; Nate Neff; Reinhard Boeschen
> **Subject:** FW: Water and Coffee
>
> Sorry guys, I couldn't help myself, but I sent just one more email to the board.
> Tony

82.     On October 31, 2022, Captain Neff e-mailed a proposal for spending the jail fees collected by the Department. Under the proposal, the 40% Fund would continue to be operated by the Sheriff and could be used for certain expenses, including expenses for the Raymond Range and upgrades to the Department.

83.     On December 6, 2022, the Board met to discuss, among other things, the proposal by the Department for the 40% Fund. In that meeting, Captain Neff informed the Board once again that the Sheriff had suspended collections of jail fees. He also informed the Board he had met with County officials to come up with a list of expenses for the Raymond Range that would not require Board approval under the proposed plan.

84.     On December 13, 2022, the Board adopted a proposal made by the Department for the 40% Fund. That proposal provided that any improvements to the Raymond Range over $5,000 would require Board approval, but otherwise the Sheriff could spend funds on maintenance of the Raymond Range without prior approval as well as other benefits to the Department.

85.     Thereafter, the Sheriff resumed collecting jail fees.

**D.  The 40% Fund Is Used to Fund Expenses for the Benefit of the Department.**

86.     As the Sheriff stated in his October 4th e-mail, the 40% Fund is used for expenses that "directly benefit and affect" the Department.

87.     Since October 2022, the Sheriff has continued to spend money collected from jail fees and deposited into the 40% Fund on expenses for the benefit of the Department. One primary example is the funding of the Raymond Range.

88.     The Raymond Range is ostensibly a firearm training facility that the Department describes as a training center. In reality, the Raymond Range is a benefit available only to

employees of the Department and their families (or other counties' law enforcement departments that pay the Sheriff for its use), a nuisance to the residents of Raymond, and an asset used to generate further revenue for the Department.

89.    The Raymond Range sits outside of Waterloo, in the town of Raymond, right off Highway 20. Employees of the Department are permitted to use the Raymond Range. The Sheriff hosts events at the Raymond Range for employees' families, including the Department's annual training day, which has been hosted at the Raymond Range every year since 2010.

90.    The Sheriff describes the Raymond Range as "a source of great pride" for the Department. The Sheriff boasted in his October 4th e-mail that "every construction and development cost associated with this training facility, as well as maintenance cost is/was paid for out of" the 40% Fund.

91.    Residents of Raymond have opposed the presence of the Raymond Range in their town for years. But, as one resident put it in a meeting with the Board on August 20, 2019, the Sheriff intimidates members of the Raymond community. That resident expressed concerns about the Raymond Range, including the noise of employees of the Department using firearms at all hours of the day. Another resident was threatened with arrest after he complained about guns firing in the evening.

92.    The Sheriff funds multiple other programs using funds deposited in the 40% Fund.

93.    For example, in or around November 2023, the Sheriff entered into a $11,249.25 contract for a "wellness app" to promote mental health for employees of the Department.

94.     The Department also utilizes the 40% Fund to fund other programs, including a 20-person Special Weapons and Tactics (SWAT) team, a Water Safety Patrol, an Aerial Response Team, and an Honor Guard.

95.     From July 10, 2021 to July 10, 2023, the Sheriff and the County collected at least $590,217.36 in jail fees from individuals previously released from the jail.

96.     The Department is aware that individuals struggle to afford the jail fees assessed. Nevertheless, the Sheriff has not only failed to reduce the amounts imposed but has instead increased the per diem rate multiple times.

97.     Through its acts and omissions, the County has adopted, ratified, and approved the policies, practices, and customs complained of herein. Further, the County has benefited from the jail fees collected and deposited into the County's general fund.

**E.  The Sheriff Has Forced Ms. Roberts to Pay Jail Fees Without Adequate Due Process.**

98.     Plaintiff Leticia Roberts is a forty-year-old mother of three young children, ages 4, 9, and 12.

99.     Ms. Roberts lives on a fixed income of approximately $1,500 per month.

100.    Ms. Roberts served a total of nine days for two offenses, docketed in the Iowa District Court for Black Hawk County as Case Nos. OWCR242017 and OWCR244151. For both offenses, Ms. Roberts was found guilty of operating a motor vehicle while under the influence.

101.    As a result, Ms. Roberts was in custody January 3–5, 2022; May 12–14, 2022; July 13–15, 2022; and August 31–September 3, 2022.

102.    Ms. Roberts first became aware the Department would invoice her for each day spent in jail and for each booking when she was released on May 14, 2022.

103.    On May 14, 2022, Ms. Roberts went through the discharge office at the jail. When she arrived at that office, two female Sheriff's deputies were present. Ms. Roberts was directed to a bathroom where she could change into her street clothes. When Ms. Roberts returned to the office, one of the deputies told her that, once she signed paperwork, she would receive the rest of her property, including her phone and her rings, and she could leave.

104.    When Ms. Roberts reviewed the paperwork she was given on May 14, 2022, she noticed a property release form and a confession of judgment form. The confession of judgment form had already been filled out.

105.    When she signed the confession of judgment form dated May 14, 2022, the only other people present were the two female deputies.

106.    The May 14, 2022 confession of judgment contains a notary stamp from Booking Clerk Jentry Woltzen, Commission No. 803220.

107.    The confession of judgment was not notarized in Ms. Roberts's presence.

108.    Mr. Woltzen was not present at the time Ms. Roberts signed the confession of judgment form.

109.    Ms. Roberts did not have identification on her when she signed the confession of judgment form.

110.    On or about August 17, 2022, an employee of the Department called Ms. Roberts regarding the jail fees. In that conversation, Ms. Roberts informed the employee that she was unable to afford the payments because she needed to support her three children.

111.    The May 14th confession of judgment form contains handwritten notes, including: "she said she can't make payments she needs to feed her 3 kids."

9-8-2020 Mary

8-17-22   She said she can't make payments she needs to feed her 3 kids
8-31-22   Mailed collection letter
9-29-22   Final Notice - Unpaid Jail fees
10-12-22   Sheriff office no longer doing collections effective 10-10-22

112. Two weeks later, on or about August 31, 2022, the Sheriff mailed Ms. Roberts a collection letter.

113. Upon information and belief, that collection letter stated: "Your failure to make your monthly payment arrangement with the Black Hawk County Sheriff has resulted in further enforcement steps. These actions may increase the total amount due."

114. Upon information and belief, the letter provided that Ms. Roberts had "10 days from the date of this letter to avoid further action by choosing one of the payment options listed below."

115. After completing her sentence for her second offense, on September 3, 2022, Ms. Roberts was told to sign a second confession of judgment form. Again, two female deputies were present. Another male deputy with whom Ms. Roberts was familiar was also present.

116. Again, on September 3, 2022, Ms. Roberts did not receive her property until she signed the forms.

117. The September 3, 2022 confession of judgment was again not notarized in Ms. Roberts's presence.

118. After she was released from the jail in September 2022, a uniformed deputy from the Department visited Ms. Roberts at her home. The deputy informed Ms. Roberts of the amount that she purportedly owed in jail fees and stated the Department would not bother her as long as she made monthly payments.

119. From October 2023 to February 2024, Ms. Roberts made a minimal amount of payment towards her jail fees in the amount of $5 each month. Her mother delivered the payments in cash to the Department.

120. Ms. Roberts ensured these payments were made so that she would avoid further law enforcement interaction.

121. Upon information and belief, Ms. Roberts was invoiced $730 for jail fees.

122. No judge ever reviewed the amount of jail fees assessed against Ms. Roberts by the Department, and Ms. Roberts was never given an opportunity to challenge the amount purportedly owed.

**F. Class Action Allegations.**

123. Ms. Roberts brings this action as a class action on behalf of herself and all others similarly situated.

124. Ms. Roberts seeks to certify a class of similarly situated people (the "Class") defined as:

> All individuals who have been released, or will be released, from the Black Hawk County Jail and have signed, or will sign, a confession of judgment for jail fees since May 14, 2022; and whose jail fees have been paid, are being paid, or will be paid under a confession of judgment absent a court order.

125. The putative Class has hundreds or thousands of class members. In 2023 alone, the jail released 6,451 people from custody. A class action is the only practicable means by which Plaintiff and Class Members can challenge Defendants' unconstitutional policies and practices.

126. There are multiple questions of law and fact common to all members of the Class, including:

- Do Defendants use confessions of judgment for jail fees before releasing individuals from the jail?

- Do Defendants employ a policy of seizing money of individuals in custody at the jail to apply towards jail fees?

- Do the confessions of judgment adequately advise signatories of the due process rights they have under Iowa Code section 356.7 and the U.S. Constitution?

- Do individuals in custody at the jail have a property interest in the amounts demanded and seized for jail fees?

- Do Defendants deprive individuals of a protected property interest?

- Do Defendants afford individuals adequate pre-deprivation process?

- Do Defendants afford individuals adequate post-deprivation process?

- Do Defendants use the moneys collected for reimbursement of administrative costs or another purpose?

- Do Defendants present confessions of judgment on a standard pre-printed form agreement?

- Do Defendants have a disparately greater bargaining power at the time the confession of judgment is signed?

- Do Defendants provide consideration in exchange for signing the confession of judgment?

- Do Defendants permit individuals signing the confessions of judgment an opportunity to negotiate the terms?

- Do Defendants allow individuals an opportunity to consult with counsel before signing the confessions of judgment?

- Do Defendants' policies, practices, and customs present an unconstitutional conflict of interest by incentivizing vigorous collection for the benefit of the Department?

127. A class action is the superior method to adjudicate the claims because questions of law and fact predominate over questions affecting only individual class members. Defendants have acted and failed to act in a manner that applies generally to the Class as a whole, rendering class-wide relief appropriate.

128.     Ms. Roberts's claims are typical of the claims of the Class. That typicality stems from the fact that, pursuant to the Policy as well as Defendants' policies, practices, and customs, Ms. Roberts signed confessions of judgment prior to being released from the jail, and the Sheriff has demanded payment of jail fees thereunder. Ms. Roberts, like every other Class Member, is injured by the same unconstitutional policies, practices, and customs maintained by Defendants.

129.     Ms. Roberts will fairly and adequately represent the interests of the Class. Ms. Roberts does not have conflicts with the unnamed members of the proposed Class.

130.     Plaintiff and Class Members are represented by attorneys from Public Justice; the ACLU of Iowa; Fredrikson & Byron, P.A.; and the Frerichs Law Office, P.C.; Plaintiff's counsel has experience litigating complex class action matters raising constitutional challenges and extensive knowledge of both the details of Defendants' practices and the relevant law. Plaintiff's counsel has the resources, expertise, and experience to prosecute this action.

## V.     CAUSES OF ACTION

### COUNT 1:
**Denial of Due Process**
**(Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1983)**
**(Plaintiff and the Class Against All Defendants)**

131.     Plaintiff incorporates by reference all preceding and forthcoming allegations as if alleged fully herein.

132.     At all times relevant to the facts alleged herein, the Sheriff acted as the primary policymaker for the County and the Department in all matters relating to the Black Hawk County Jail and all actions complained of herein.

133.     Plaintiff and Class Members have a property interest in the amounts demanded and seized by Defendants.

134.     As a matter of policy, the Defendants deprive Plaintiff and Class Members of their property by demanding payment of jail fees from Plaintiff and Class Members outside of the statutory process provided in Iowa Code section 356.7.

135.     The Defendants provide no process by which Plaintiff and Class Members can challenge the imposition and collection of jail fees.

136.     The Defendants avoid the statutorily required process for the collection of jail fees by requiring Plaintiff and Class Members to sign confessions of judgment prior to being released from the jail.

137.     Through its acts and omissions, the County has adopted, ratified, and approved the policies, practices, and customs complained of herein.

## COUNT 2:
### Due Process Conflict of Interest
**(Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1983)**
**(Plaintiff and the Class Against All Defendants)**

138.     Plaintiff incorporates by reference all preceding and forthcoming allegations as if alleged fully herein.

139.     At all times relevant to the facts alleged herein, the Sheriff acted as the primary policymaker for the County and the Department in all matters relating to the Black Hawk County Jail and all actions complained of herein.

140.     Defendants' policies, practices, and customs permit the Department to collect jail fees at a rate determined by the Sheriff, without any judicial review, and spend a portion of the amounts collected for the benefit of the Department.

141.     The Sheriff determines the rates charged for jail fees on behalf of the County; detains individuals; requires them to sign a confession of judgment at the end of their sentence, prior to being released from the jail; initiates civil reimbursement claims against those unable to

pay; is responsible for service in that same reimbursement claim; and ultimately garnishes the wages of individuals when they are unable to pay.

142.     By implementing the Policy using confessions of judgment, the Sheriff evades judicial review of the fees assessed against individuals released from the jail. As a result, the Sheriff is the sole arbiter of the amount of the jail fees purportedly owed.

143.     The Defendants deny individuals an opportunity to show that the jail fees were improperly assessed, that the amount assessed is wrong, that the amount assessed is excessive, and that they are unable to pay the amount assessed. In doing so, the Defendants deny individuals who have signed a confession of judgment any due process required under law.

144.     The Sheriff stands to profit from vigorous collection of jail fees as it draws from the 40% Fund to fund superfluous expenses for the benefit of the Department, including but not limited to the Raymond Range.

145.     The County profits from vigorous enforcement because 60% of the amount collected is deposited in the County general fund.

146.     The practices employed by the Sheriff in assessing and collecting jail fees via confession of judgment creates an unconstitutional conflict of interest because those practices incentivize the Department to "tenaciously pursue" collections for the benefit of the Department.

147.     The Department's collections are unchecked by the courts or the County.

148.     Due to the prospect of financial gain, the Sheriff is incentivized to maximize the amount of jail fees extracted from individuals released from the jail.

149.     The County permits the Sheriff to act as a self-interested collector of debt purportedly owed to the Department under Iowa Code section 356.7.

150. Through its acts and omissions, the County has adopted, ratified, and approved the policies, practices, and customs complained of herein.

## COUNT 3:
### Unlawful Confessions of Judgment
### (Fourteenth Amendment to the U.S. Constitution, 28 U.S.C. § 2201)
### (Plaintiff and the Class Against All Defendants)

151. Plaintiff incorporates by reference all preceding and forthcoming allegations as if alleged fully herein.

152. At all times relevant to the facts alleged herein, the Sheriff acted as the primary policymaker for the County and the Department in all matters relating to the Black Hawk County Jail and all actions complained of herein.

153. Pursuant to the Policy, the Defendants use confessions of judgment to impose and collect jail fees.

154. Pursuant to the Policy, the Sheriff presents individuals with a confession of judgment on a standardized form as part of the Department's release procedures, prior to being released from the jail.

155. Individuals released from jail do not have equal bargaining power to negotiate the terms of the confession of judgment.

156. The Defendants provide no consideration in exchange for signing the confessions of judgment.

157. The Defendants do not provide an opportunity for individuals released from jail to consult with counsel when signing the confessions of judgment.

158. The confession of judgment form used by the Defendants does not advise signatories of their constitutional rights to due process, including but not limited to their rights to notice and an opportunity to be heard.

159.    As a result, the confessions of judgment used by the Defendants to extract jail debt are unlawful, unconstitutional, and unenforceable.

160.    Through its acts and omissions, the County has adopted, ratified, and approved the policies, practices, and customs complained of herein.

## VI.    PRAYER FOR RELIEF

WHEREFORE Plaintiff prays for relief as follows:

161.    Certification of the Class, as defined herein;

162.    An award of compensatory damages to Plaintiff and Class Members in an amount to be determined at trial under 42 U.S.C. §§ 1983 and 1988;

163.    Damages in an amount to be determined at trial;

164.    An award of costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3);

165.    A declaration that the confessions of judgment signed by Plaintiff and Class Members are unlawful, unconstitutional, and unenforceable;

166.    Injunctive relief prohibiting the Defendants from using confessions of judgment as a means of collecting jail fees;

167.    Injunctive relief prohibiting the Defendants from initiating reimbursement claims using confessions of judgment; and

168.    Such other and further relief as may be just and equitable.

## VII.    JURY DEMAND

169.    Plaintiff demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 13th day of May, 2024.


By:     _s/ Rita Bettis Austen_              _s/ Kelcy Whitaker_


Charles Moore                          Rita Bettis Austen
Public Justice                         Thomas Story
1620 L Street NW, Suite 630            Shefali Aurora
Washington, DC 20036                   ACLU of Iowa Foundation, Inc.
T: (202) 861-5226                      505 Fifth Ave., Suite 808
cmoore@publicjustice.net               Des Moines, IA 50309-2317
(*Pro Hac Vice* application forthcoming)   T: (515) 207-0567
                                       F: (515) 243-8506
                                       rita.bettis@aclu-ia.org
                                       thomas.story@aclu-ia.org
                                       shefali.aurora@aclu-ia.org


Leslie A. Bailey                       Thomas P. Frerichs
Public Justice                         Frerichs Law Office, P.C.
475 14th Street, Suite 610             106 E. 4th Street, P.O. Box 328
Oakland, California 94612              Waterloo, IA 50704-0328
T: (510) 622-8203                      T: (319) 236-7204
lbailey@publicjustice.net              F: (319) 236-7206
(*Pro Hac Vice* application forthcoming)   tfrerichs@frerichslaw.com

                                       Brandon R. Underwood
                                       Kelcy Whitaker
                                       Michael D. Currie
                                       Sarah Golwitzer
                                       Fredrikson & Byron P.A.
                                       111 East Grand Ave., Suite 301
                                       Des Moines, IA 50309-1884
                                       T: (515) 242-8900
                                       F: (515) 242-8950
                                       bunderwood@fredlaw.com
                                       kwhitaker@fredlaw.com
                                       mcurrie@fredlaw.com
                                       sgolwitzer@fredlaw.com


*Attorneys for Plaintiff*