IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| LETICIA ROBERTS and CALVIN SAYERS,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>TONY THOMPSON, in his official capacity as Black Hawk County Sheriff, and BLACK HAWK COUNTY, IOWA,<br><br>　　　　Defendants. | No. 24-CV-2024-CJW-MAR<br><br>**ORDER** |

_____

This matter is before the Court on two motions. The first motion before the Court is plaintiffs' motion for preliminary injunction. (Doc. 11). Defendants filed a resistance, (Doc. 16), and plaintiffs filed a reply, (Doc. 20).

The second motion before the Court is defendants' motion to dismiss. (Doc. 12). Plaintiffs filed a resistance. (Doc. 22). Defendants filed a reply. (Doc. 23).

On September 20, 2024, the Court heard oral argument from the parties on both motions. (Doc. 28).

For the following reasons, the Court **grants** defendants' motion to dismiss. The Court therefore **denies as moot** plaintiffs' motion for preliminary injunction.

## I. DEFENDANTS' MOTION TO DISMISS

### A. *Factual Background*[1]

Plaintiffs' extensive fact section in the complaint details allegations about Black Hawk County's collection method of jail fees generally. (Doc. 9, at 1–21). The

---

[1] These facts are taken from plaintiffs' amended complaint and attachments. (Doc. 9). Of course, these are only allegations at this stage.

"preliminary statement" at the beginning of the complaint summarizes these general allegations fairly well:

> When releasing people from the Black Hawk County Jail, the Black Hawk County Sheriff's Office straps individuals with debt that, for many, makes a disruptive period of incarceration even more damaging. While those individuals attempt to get their lives back in order, Sheriff Tony Thompson has implemented a policy that demands payment to the jail for "room and board" at a rate of $70 per day plus $25 in administrative fees per booking (collectively referred to as "jail fees"). To compel payment of these fees, the Department presents individuals serving a sentence at the jail with a confession of judgment prior to being released from the jail. If that same individual has money on their person upon booking, the Sheriff seizes that money and applies it against their "debt." After release, the Sheriff demands payment under the terms of the confession of judgment, without going through the statutorily required judicial processes. The Department uses the seized money to fund, among other things, a gun range for use by its employees, at times outfitted with cotton candy and ice cream.

(*Id.*, at 1). The Sheriff's Department receives forty percent of the jail fees collected, as voted upon by the county board of supervisors. (*Id.*, at 19).

Plaintiffs are two individuals who have served sentences at the Black Hawk County Jail. Leticia Roberts served two separate sentences between January 2022 and September 2022. (*Id.*, at 2–3). On May 14, 2022, Roberts "went through the discharge office at the jail" where two deputies were present. (*Id.*, at 22). The deputies directed Roberts to a bathroom where Roberts could change into her street clothes. When Roberts returned to the office, one of the deputies told her that once she signed paperwork, she would receive the rest of her property, including her phone and rings, and Roberts could leave. (*Id.*). The paperwork consisted of a property release form and a confession of judgment form. Roberts signed the confession of judgment form. (*Id.*).

On August 17, 2022, an employee of the Sheriff's Department called Roberts about the jail fees Roberts owed. Roberts told the employee that she was unable to afford

2
Case 6:24-cv-02024-CJW-MAR    Document 34    Filed 11/01/24    Page 2 of 18

the payments because she needed the money to support her children. (*Id.*, at 23). On August 31, 2022, the Sheriff mailed Roberts a collection letter stating, in part, "Your failure to make your monthly payment arrangement with the Black Hawk County Sheriff has resulted in further enforcement steps. These actions may increase the total amount due." (*Id.*). The letter stated that Roberts had "10 days from the date of this letter to avoid further action by choosing one of the payment options listed below." (*Id.*).

On September 3, 2022, Roberts finished her second stint at the jail. (*Id.*, at 23–24). When she was leaving, Roberts went through the same process as before: several deputies were in the discharge office, they gave her the paperwork, Roberts signed it, they gave her property back, and she left. (*Id.*, at 23–24). Roberts ultimately owed jail fees totaling $730. (*Id.*, at 24).

At some point after Roberts' second stint in jail, a uniformed Sheriff's deputy visited Roberts at her home. (*Id.*). The officer informed Roberts of the amount she owed in jail fees, and said that the Sheriff's Department would not bother her as long as she made monthly payments. (*Id.*). From October 2023 to February 2024, Roberts made monthly $5 payments towards her jail fees. (*Id.*).[2]

Calvin Sayers, the other plaintiff, served fifty-seven days in Black Hawk County Jail ranging from January 2022 to March 2024. (Doc. 9, at 24). Sayers served the time in increments because of his obligations to provide care for his adult son with disabilities. (*Id.*, at 24–25). At some point while Sayers was serving his sentence, defendants seized $75 from him to apply towards his jail fees. (*Id.*, at 25). On March 25, 2024, the Sheriff's Department presented Sayers with a confession of judgment for jail fees. The

---

[2] The standard terms in the confession of judgment form provide that the individual will pay $25 per month. (*Id.*, at 9). Thus, the $5 per month payments appear to be less than what Roberts would have owed under the confession of judgment she signed. Indeed, this appears to be the case, according to plaintiffs' exhibit supporting their motion for preliminary injunction. (*See* Doc. 11-1, at 2).

document reflected that Sayers owed $4,340 in jail fees—this reflected Sayers' total amount owed, $4,415, with a $75 credit for the cash previously seized from Sayers. (*Id.*). Sayers signed the confession of judgment prior to being released from the jail "because he believed he had no other choice." (*Id.*). On May 1, 2024, Sayers made his first payment for jail fees to the Sheriff in the amount of $50. (*Id.*).

Plaintiffs further allege that "no judge ever reviewed the amount of jail fees assessed against [both plaintiffs] by the [Sheriff's] Department, and [neither plaintiff was ever] given an opportunity to challenge the amount purportedly owed." (*Id.*, at 24, 26).

The complaint also includes allegations on behalf of a class. The purported class essentially includes people who signed a confession of judgment for jail fees after being released from the Black Hawk County Jail. (*Id.*, at 26–28).

Plaintiffs attached to the complaint what appears to be the standard confession of judgment form used by the Sheriff's Office. (Doc. 9-2, at 2). The form provides, in part:

> I, [name], hereby swear on oath that I am the inmate named above, that I can read and understand the information contained in this document, that the above contact information is true and correct, that I owe the sums of money as indicated above, and that I confess judgment in the amount of the above balance due, in its entirety, and I understand that if judgment is entered against me, on this confession, I will further be liable for service of process fees and other court cost incurred in association with that judgment.

(*Id.*). There are then spaces to insert the amount of agreed upon monthly payment and when the first payment is due. Further down the form, it states that, if the person does not make monthly payments, the Sheriff's office can file the necessary legal proceedings to collect unpaid amounts, and "in such proceeding this document will be filed as a Confession of Judgment of the above balance due." (*Id.*). Finally, the form states,

directly above the signature line: "I further state that I am making and signing this sworn statement as my voluntary act and deed." (*Id.*).

## B. Motion to Dismiss Standard

A complaint filed in federal court must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Rule 8 does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nevertheless, it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that relies on "naked assertion[s]" devoid of "further factual enhancement," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 557.

Before filing an answer, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (further citation omitted).

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "The Court must also grant all reasonable inferences from the pleadings in favor of the nonmoving party." *Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*, No. 23-CV-33-CJW-MAR, 2023 WL 6163487, at *2 (N.D. Iowa Sept. 21, 2023) (quotations and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility is not equivalent to probability, but it is something "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "The question . . . is not whether [a plaintiff] might at some later stage

be able to prove [its claims]; the question is whether [a plaintiff] has adequately asserted facts (as contrasted with naked legal conclusions) to support his claims." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1129 (8th Cir. 2012).

A defendant may also move to dismiss under Federal Rule of Civil Procedure 12(b)(1), challenging the Court's subject-matter jurisdiction. When the defendant does not go beyond the pleadings in attacking subject-matter jurisdiction, a court "restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Gen. Motors LLC v. KAR Auto Grp. Of Decorah, Inc.*, No. 6:20-CV-02039 CJW-KEM, 2022 WL 1715216, at *2 (N.D. Iowa Mar. 11, 2022) (quoting *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016)). Here, defendants do not go beyond the pleadings in their standing arguments, and thus the Court's analysis must use the same standards as a motion to dismiss under Rule 12(b)(6).

### C. *Analysis*

Plaintiffs bring claims against defendants under Title 42, United States Code, Section 1983. Specifically, plaintiffs allege that defendants violated their Fourteenth Amendment right under the procedural aspect of the Due Process Clause. (Doc. 9, at 28–29). Plaintiffs' claim generally is that defendants deprived plaintiffs of their property—i.e., money in the form of jail fees—without due process of law through the confessions of judgment, and that defendants provide no process by which plaintiffs can challenge the jail fees. (*Id.*). Plaintiffs specifically state that defendants, as a matter of policy, deprive plaintiffs of their property "by demanding payment of jail fees from plaintiffs . . . outside of the statutory process provided in Iowa Code section 356.7." (*Id.*, at 28). Plaintiffs also bring claims for "Due Process Conflict of Interest" and

"Unlawful Confessions of Judgment."[3] (*Id.*, at 29–31). Plaintiffs request the following relief: damages; a declaration that the confessions of judgment are "unlawful, unconstitutional, and unenforceable;" an injunction prohibiting defendants from using confessions of judgment as a means of collecting jail fees; and an injunction prohibiting defendants from initiating reimbursement claims using confessions of judgment. (*Id.*, at 32).

Defendants' motion to dismiss challenges plaintiffs' claims in two ways. First, defendants move under Federal Rule of Civil Procedure 12(b)(1), arguing that plaintiffs lack standing to bring these claims. (Doc. 12-1, at 8–11). Defendants also move under Rule 12(b)(6), arguing that plaintiffs have failed to state a claim for relief, and thus plaintiffs' claims should be dismissed. (*Id.*, at 11–16). Plaintiffs resist on both fronts. (Doc. 22).

### 1. Standing

Federal courts are courts of limited jurisdiction and may only hear certain Cases and Controversies. U.S. Const. art. III, § 2. A plaintiff must have "standing" in order to invoke a federal court's jurisdiction. *General Motors*, 2022 WL 1715216, at *3 (citing *Sazone v. Mercy Health*, 954 F.3d 1031, 1046 (8th Cir. 2020)). The United States Supreme Court has called the standing requirement an "irreducible constitutional minimum." *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992).

Standing includes three elements:

> First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of— the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before

---

[3] Plaintiffs bring the latter claim—"Unlawful Confessions of Judgment"—under the Declaratory Judgment Act, Title 18, United States Code, Section 2201. (Doc. 9, at 31).

> the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560–61 (cleaned up and internal citations omitted). The party invoking federal jurisdiction—plaintiffs here—has the burden to establish the three elements. *Id.* at 561. "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).[4]

Defendants argue that plaintiffs lack standing because they have not alleged a concrete and particularized injury-in-fact. (Doc. 12-1, at 9–11). Defendants emphasize that plaintiffs have not alleged that they do not owe the assessed jail fees. (*Id.*). Defendants note that plaintiffs have not alleged, for example, that defendants assessed the wrong amounts to plaintiffs, or that the amounts were excessive, or that defendants calculated the amount of fees improperly. (*Id.*, at 10). Defendants go on to argue that plaintiffs have not alleged that they would have been required to pay lower fees if defendants had not used the confessions of judgment and instead used some other mechanism of collection. (*Id.*). The heart of defendants' argument, it appears, is that plaintiffs are in no worse position than if defendants had chosen to collect the fees in a different way. In other words, although plaintiffs have made fee payments, those payments were not *caused* by the confessions of judgment because plaintiffs would have had to make the payments either way.

---

[4] The Supreme Court has also explained the fact that a lawsuit includes class allegations "adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Spokeo, Inc.*, 578 U.S. at 338 n.6 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976)). So, plaintiffs' class allegations are irrelevant to the standing analysis.

Plaintiffs argue they have alleged injury-in-fact in two ways. Plaintiffs argue they have paid money to defendants, which constitutes an injury-in-fact. (Doc. 22, at 11–13). Plaintiffs also argue they have been denied due process, and this violation alone also satisfies the injury-in-fact requirement. (*Id.*). Concerning this second argument, plaintiffs point to four premises which lead to their conclusion: (1) plaintiffs signed the confessions of judgment requiring payment of fees "without the adequate constitutional safeguards;" (2) defendants use the documents to compel plaintiffs to pay money; (3) defendants deny plaintiffs notice or opportunity to be heard regarding the fees; and (4) defendants continue to threaten plaintiffs with "immediate and essentially incontestable court action to compel further payments." (*Id.*, at 13).

Defendants, in reply, argue that "merely signing a confession of judgment is not a cognizable harm." (Doc 23, at 2). Defendants also argue that plaintiffs have not satisfied the redressability prong of standing. Defendants' argument on this front is that, because plaintiffs have not challenged that they owe the fees, a court ruling in plaintiffs' favor will not change anything. (*Id.*, at 2–3). In sum, defendants conclude that "regardless of whether defendants proceed with collection through a confession of judgment or a reimbursement claim, the end result is the same." (*Id.*, at 3).

Despite the parties' arguments, the major issues here are the second and third elements of the standing inquiry: causation and redressability. Looking closely at defendants' initial arguments, they are essentially arguments about causation, even though defendants couch them in the injury-in-fact element. Defendants do not argue that plaintiffs have not paid any money. Defendants argue, rather, that plaintiffs have not paid any *more* money than they would have if defendants collected the fees in a different way. By simply paying part of the jail fees—a monetary loss for which plaintiffs claim defendants must answer in damages—plaintiffs have suffered an injury-in-fact. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("If a defendant has caused . . .

9
Case 6:24-cv-02024-CJW-MAR    Document 34    Filed 11/01/24    Page 9 of 18

monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III.").

The issue, then, is whether plaintiffs' injuries are "fairly traceable to the challenged conduct of the defendant." *Spokeo, Inc.*, 578 U.S. at 338. Plaintiffs' injuries are paying the jail fees—plaintiffs were allegedly injured because they have less money than they would have if they did not pay the fees. The conduct plaintiffs challenge is defendants' use of confession of judgment documents. For plaintiffs to have standing, then, the fees they paid to defendants must be fairly traceable to defendants' use of confessions of judgment. And as defendants argue, plaintiffs do not allege that they would have paid less in fees if defendants collected the fees in a different way. Plaintiffs do not claim that they do not owe the fees or that they should not owe the fees. Thus, plaintiffs would owe the fees no matter if defendants used the confessions of judgment or not. Thus, defendants' use of confessions of judgment—the conduct plaintiffs challenge— was not the source of plaintiffs' alleged injuries, and therefore the injuries cannot be said to be "fairly traceable to the challenged conduct" of defendants. *See id.*

The Court also agrees with defendants regarding the third element, redressability. Under this element, plaintiffs must allege facts showing that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561. If plaintiffs ultimately prevail on their argument that defendants have collected the fees improperly, nothing would change. Plaintiffs do not allege that they do not owe the fees, and plaintiffs do not allege any fundamental issue with the fees themselves. So, it is unclear to the Court what damages plaintiffs have suffered here, even if they prove that defendants' collection method is improper.

In many ways, plaintiffs are asking the Court to provide an advisory opinion. Yet, "[a] federal court is without power to issue advisory opinions." *Equip. Mfrs. Inst. v. Janklow*, 88 F. Supp. 2d 1061, 1065 (D.S.D. 2000); *see also Carney v. Adams*, 592 U.S.

53, 58 (2020). Among the items of relief plaintiffs seek are the following: "A declaration that the confessions of judgment signed by Plaintiffs . . . are unlawful, unconstitutional, and unenforceable;" "Injunctive relief prohibiting the Defendants from using confessions of judgment as a means of collecting jail fees;" and "Injunctive relief prohibiting the Defendants from initiating reimbursement claims using confessions of judgment[.]" (Doc. 9, at 32).

Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Court of Appeals for the Eighth Circuit has explained:

> The phrase "case of actual controversy" in § 2201 "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126, 127 S. Ct. 764, 166 L.Ed.2d 604 (2007). There must be a concrete dispute between parties having adverse legal interests, and the declaratory judgment plaintiff must seek "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S. Ct. 461, 81 L.Ed. 617 (1937). In the declaratory judgment context, the difference between an abstract question and an Article III case or controversy
>
>> is necessarily one of degree, and it would be difficult . . . to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.
>
> *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941), quoted in part in *MedImmune*, 549 U.S. at 127, 127 S.Ct. 764.

*Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 687 F.3d 1076, 1081 (8th Cir. 2012).

Here, defendants have not initiated a reimbursement claim against either named plaintiff—or, at least, plaintiffs have not alleged such. Plaintiffs also have not alleged facts showing that defendants otherwise used the confessions of judgment as a means of collecting jail fees from plaintiffs. Thus, the only request for relief which has any application to plaintiffs is the request for a declaration that the confessions of judgment are unlawful, unconstitutional, and unenforceable. If the Court ultimately granted this request and filed an order declaring that the confessions of judgment are unlawful, unconstitutional, and unenforceable, it would not redress plaintiffs' alleged injuries. It would be an advisory opinion with no real-world effect, because defendants have not filed plaintiffs' confessions of judgment in court and thus have not used them to collect plaintiffs' fees.[5] Of course, Article III of the Constitution "prevent[s] the federal courts from issuing advisory opinions." *Carney*, 592 U.S. at 58. Thus, plaintiffs have failed to allege facts satisfying both the causation element and the redressability element.

Plaintiffs also lack standing to bring their two other causes of action. Plaintiffs make general allegations about the jail fee process and the Sheriff's involvement in their second cause of action, entitled "Due Process Conflict of Interest." But there is nothing tying this claim to plaintiffs. Indeed, that claim, as it appears in the complaint, does not

---

[5] The fact that defendants have not filed plaintiffs' confessions of judgment in a reimbursement action is arguably the key fact here. If defendants had filed the documents in a state court action against plaintiffs, and the action had led to judgments against plaintiffs requiring them to pay these fees, then the analysis here might be different, at least as regarding standing. If that were the case, one could argue that the confessions of judgment caused plaintiffs to be deprived of their property interest, because the judgment—which would be at least partly based upon the confessions of judgment—would require plaintiffs to pay money. Those are not the facts here, though. The facts in the complaint fail to show a causal relationship between the confessions of judgment and plaintiffs paying the jail fees. This is, in a way, a ripeness issue.

even mention plaintiffs. Instead, the claim only speaks of what defendants do generally. Plaintiffs do not allege facts bearing on any of the three standing elements in the conflict of interest claim. The same can be said for plaintiffs' third cause of action, "Unlawful Confessions of Judgment." (Doc. 9, at 31). Again, even if the confessions of judgment are "unlawful" in some way, defendants have not used them to deprive plaintiffs of any interests. Any order by the Court would be an advisory opinion, as these plaintiffs have not suffered an injury tied to the confessions of judgment. Plaintiffs, therefore, lack standing to bring their second and third causes of action.

Thus, defendants' motion to dismiss for lack of standing is **granted**.

### 2. *Failure to State a Claim*

The Court concluded above that plaintiffs lack standing to bring these claims, which deprives the Court of subject matter jurisdiction. However, the Court will provide a short analysis of defendants' other ground for their motion to dismiss as an alternative ground for dismissal.

Specifically, defendants argue that plaintiffs have failed to state a procedural due process claim under Title 42, United States Code, Section 1983. (Doc. 12-1, at 11–13).

Section 1983 provides, in pertinent part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]" 42 U.S.C. § 1983. A plaintiff bringing a claim under Section 1983 must prove three elements: "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *Hart v. City of Little Rock*, 432 F.3d 801, 804 (8th Cir. 2005) (quotation omitted).

"The Due Process Clause protects individuals from a state's impermissible deprivation of a protected property interest." *Wright v. Family Support Div. of Mo. Dept. of Soc. Servs.*, 458 F. Supp. 3d. 1098, 1111 (E.D. Mo. 2020) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). "Procedural due process claims consist of two elements: (1) the existence of a liberty or property interest entitled to due process protection, and (2) deprivation of that interest without sufficient notice and opportunity to present objections." *Id.* (citation omitted).

Plaintiffs argue that they have pleaded facts satisfying each element of a procedural due process claim. (Doc. 22, at 14–17). One of plaintiffs' arguments, which is a requirement for plaintiffs' claim, is that defendants deprived plaintiffs of a property interest, i.e., their money. (*Id.*, at 16). Defendants reply to this argument by stating that "the mere signing of a confession of judgment or the payment of jail fees do not amount to a deprivation in and of itself." (Doc. 23, at 3).

The Court agrees with defendants here. Plaintiffs are entitled to procedural rights only if defendants deprived plaintiffs of their property. But plaintiffs generally voluntarily paid defendants money towards the jail fees. Plaintiffs were not ordered by a court to pay the jail fees. Plaintiffs were asked by defendants to pay the fees, and plaintiffs paid the fees. Plaintiffs do not even claim that they do not owe the fees. This is not a case where plaintiffs argue that defendants are currently holding plaintiffs' money unlawfully—a situation where plaintiffs may indeed hypothetically have a tenable claim. *See, e.g.*, *Nelson v. Colorado*, 581 U.S. 128 (2017).[6] This is also not a case where

---

[6] Plaintiffs point to the *Nelson* case, stating its holding is that "there is 'an obvious interest in regaining the money . . . paid to' the state." (Doc. 22, at 15) (quoting *Nelson*, 581 U.S. at 135). To be fair, plaintiffs use this to support their argument that their money is a protected property interest. Plaintiffs are likely correct in that argument. *Nelson*, however, stands for something else as well. The *Nelson* plaintiffs had an obvious interest in regaining the money they paid to the state, in large part, because the state was holding their money without any justification. Those plaintiffs had paid court costs, restitution, and the like after they were convicted of crimes.

plaintiffs' wages were frozen involuntarily without a hearing, like the case plaintiffs point to in their brief. (Doc. 22, at 16) (citing *Sniadach v. Fam. Fin. Corp. of Bay View*, 395 U.S. 337, 342 (1969)). Instead, plaintiffs voluntarily paid defendants the fees. Defendants did not deprive plaintiffs of their property interest. *See Yearous v. Niobrara Cnty. Mem'l Hosp. ex rel. Bd. Of Trs.*, 128 F.3d 1351, 1356 (10th Cir. 1997) ("If Plaintiffs resigned of their own free will, even as a result of Defendant's actions, then they voluntarily relinquished their property interests and, thus, Defendant did not deprive them of property without due process of law.").

In another section of their brief, plaintiffs appear to implicitly understand that they voluntarily paid the fees. The parties hotly debate whether Iowa Code Section 356.7 is the exclusive remedy for collecting jail fees under the circumstances.[7] Plaintiffs argue that the section is the exclusive remedy to collect fees. (Doc. 22, at 18–20). Plaintiffs argue that the Iowa legislature imposed no obligations in Section 356.7 on individuals subject to the section. (*Id.*, at 20 n.7). That is, although some sections of the code create obligations to make payments without a court order, plaintiffs argue that "no such obligation exists under Section 356.7 unless and until a court enters judgment on a reimbursement claim." (*Id.*). According to plaintiffs' argument, then, they were under no obligation to make payments on their jail fees "unless and until" a court entered judgment on a reimbursement claim. If the Court were to accept plaintiffs' argument here, it would further support the idea that plaintiffs voluntarily made payments on their fees, because, according to plaintiffs, they were under no obligation to make payments,

---

Later, the *Nelson* plaintiffs were acquitted through various appeals. At that point, the state had no claim to the restitution and the like, because those judgments had been reversed. The plaintiffs claimed that the state was keeping their money wrongly or without justification, and the Court agreed. *See Nelson*, 581 U.S. at 136–39. Here, plaintiffs make no such claim.

[7] To be clear, the Court's analysis and conclusions in this order do not depend on whether Iowa Code Section 356.7 is the exclusive manner of collecting jail fees.

because a court had not entered any judgment against them on a reimbursement claim. Thus, plaintiffs cannot state a procedural due process claim, and the Court would, alternatively, grant defendants' motion to dismiss on this ground.

Defendants also argue plaintiffs' "Due Process Conflict of Interest" claim should be dismissed for failure to state a claim. (Docs. 12-1, at 15–16; & 23, at 4–5). Plaintiffs resist, arguing they have stated a claim. (Doc. 22, at 23–24). One of defendants' arguments is that defendants were "not acting in a quasi-judicial capacity by issuing confessions of judgment to collect jail fees." (Doc. 23, at 4).

Indeed, for this type of claim, the Supreme Court has noted that it is "designed for officials performing judicial or quasi-judicial functions," and that it is generally "not applicable to those acting in a prosecutorial or plaintiff-like capacity." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 248 (1980). The Court of Appeals for the Eighth Circuit sometimes refers to the person subject to this claim as an "adjudicator." *See, e.g.*, *Yamaha Motor Corp., U.S.A. v. Riney*, 21 F.3d 793, 798 (8th Cir. 1994) ("An adjudicator is presumed to be unbiased; to overcome that presumption, a litigant must make a showing of conflict of interest or some other specific reason for disqualification.") (internal quotations omitted).

It is unclear how these defendants could be said to have performed "judicial or quasi-judicial functions." *Marshall*, 446 U.S. at 248. Plaintiffs' allegations are, essentially, that defendants collected jail fees from plaintiffs and that plaintiffs signed confessions of judgment which were requested by defendants. There is no allegation that defendants acted in a fact-finding or adjudicative capacity, as one would expect from a person performing judicial or quasi-judicial functions. As defendants argue, they "are not acting in a [judicial or] quasi-judicial capacity by issuing confessions of judgment to collect jail fees." (Doc. 23, at 4). Instead, defendants are acting in more of a "prosecutorial or plaintiff-like capacity," and therefore plaintiffs' conflict of interest

claim does not generally line up with Supreme Court precedent. *See Marshall*, 446 U.S. at 248.[8]

In *Marshall*, the Court noted that there are some limits on "administrative prosecutors," even if those limits are not the same as the limits for judicial officers. *Id.* at 249–50. The *Marshall* Court discussed these limits in the context of prosecutorial decisions, and the general question is whether there is some "personal interest" in the "enforcement process." *Id.* Here, however, defendants are not making decisions about enforcement, but instead requesting jail fees. Defendants have not even initiated legal action against plaintiffs for the fees. The *Marshall* Court cites, in this section, a case where the prosecutor was disqualified from participating in litigation in which he had a personal interest. *Id.* at 250 (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978)). The facts here do not fit a "conflict of interest" claim, particularly because defendants are not acting in a judicial or quasi-judicial capacity, and because defendants are not making prosecutorial decisions—instead, they are asking for jail fees.

Thus, plaintiffs cannot state a claim for due process conflict of interest, and the Court alternatively grants defendants' motion to dismiss for failure to state a claim.

As for plaintiffs' third claim, "Unlawful Confessions of Judgment," the Court will rest on its standing analysis, concluding that to rule on this claim would amount to an unwarranted advisory opinion rather than a proper declaratory judgment.

## II. PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs' motion for preliminary injunction is also before the Court. (Doc. 11). The Court concluded above, however, that plaintiffs lack standing to bring any of their three claims. Thus, plaintiffs' motion for preliminary injunction is **denied as moot**.

---

[8] Even the idea that defendants were acting in a prosecutorial or plaintiff-like capacity is arguably a stretch. Defendants did not initiate any legal proceeding against plaintiffs. Acting in a prosecutorial or plaintiff-like capacity often includes initiating some kind of legal proceeding.

### III. CONCLUSION

For these reasons, the Court **grants** defendants' motion to dismiss. (Doc. 12). The Court **denies as moot** plaintiffs' motion for preliminary injunction. (Doc. 11). Plaintiffs' claims are **dismissed** and this case can be closed.

**IT IS SO ORDERED** this 1st day of November, 2024.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa