IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

|  |  |
|---|---|
| LETICIA ROBERTS and CALVIN SAYERS, on behalf of themselves and others similarly situated;<br><br>           Plaintiffs,<br>  v.<br><br>SHERIFF TONY THOMPSON, in his official capacity; and BLACK HAWK COUNTY;<br><br>           Defendants. | Case No. 6:24-cv-02024-CJW-MAR |

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR LEAVE TO AMEND THE PLEADINGS

Plaintiffs Leticia Roberts and Calvin Sayers respectfully move the Court for leave to amend the pleadings and file a Second Amended Complaint, pursuant to Rules 15, 59, and 60 of the Federal Rules of Civil Procedure. A copy of the proposed Second Amended Complaint is attached as Exhibit A. A comparison version showing the changes made from the First Amended Complaint is attached as Exhibit B. The Second Amended Complaint cures deficiencies[1] articulated in the Court's order dated November 1, 2024, dismissing the First Amended Complaint, ECF No. 34 (the "Order"). In particular, the Second Amended Complaint explicitly alleges the bases for Plaintiffs' standing to bring a single cause of action that Defendants' policies, practices, and customs violate Plaintiffs' rights to procedural due process. Accordingly, the Court should grant the motion, set aside the judgment, and permit Plaintiffs to file the Second Amended Complaint.

---

[1] For purposes of this motion, Plaintiffs refer to the Order, but reserve all arguments regarding the Order.

1

## FACTUAL BACKGROUND

Plaintiffs Leticia Roberts and Calvin Sayers brought this action on behalf of themselves and similarly situated individuals, challenging Defendants' policies, practices, and customs regarding the imposition and collection of room and board at a rate of $70 per day plus $25 in administrative fees per booking (collectively referred to as "jail fees"). First Amend. Compl., ECF No. 9 (June 7, 2024). Plaintiffs alleged that "Defendants' policies, practices, and customs are unconstitutional, and their use of confessions of judgment to impose and collect jail fees is unlawful." *Id.* ¶ 3. Ms. Roberts "was invoiced a total of $730 in jail fees for the time she was detained at the Black Hawk County Jail," and Defendants "used two confessions of judgment to impose and collect these fees without a court order." *Id.* ¶ 7. Ms. Roberts failed to pay her jail fees until October 2022, but she then began making payments after "a Sheriff's deputy visited her home" and told her "the Department would not bother her" as long as she made regular payments. *Id.* ¶ 11; *see also id.* ¶¶ 121–22. Mr. Sayers, for his part, "was invoiced a total of $4,415 for jail fees," *id.* ¶ 8, and "Defendants seized a total of $75 from Mr. Sayers," *id.* ¶ 133.

Plaintiffs alleged that Defendants "demand[] payment of jail fees under the terms of the confession of judgment, without any process by which those amounts can be reviewed or challenged." *Id.* ¶ 15. "Defendants used those confessions of judgment to require payment of jail fees without due process of law." *Id.* ¶ 103. Defendants' policies, practices, and customs for imposing and collecting jail fees pursuant to confessions of judgment involve several elements: (1) obtaining an individual's signature on a confession of judgment; (2) demanding payment pursuant to the confession of judgment, beyond the authority granted under Iowa law and outside the statutory process; and (3) when individuals do not pay, initiating special, streamlined reimbursement claims using the confessions of judgment to obtain the ability to garnish wages and

bank accounts without a judge ever seeing the claim or assessing whether the fees are lawfully owed or should be waived.

*First*, "[p]rior to being released from the jail, as part of release procedures, inmates completing a term of incarceration at the Black Hawk County Jail are provided paperwork for signing," including a "Room and Board Confession of Judgment." *Id.* ¶ 30. The confession of judgment document not only "provide[s] that the individual will pay $25 per month beginning the month following release," *id.* ¶ 34, it may also indicate that any money an individual may have had on their person at the time of booking and that that amount will be kept by the County as an "Amount Paid" towards "the jail fees purportedly owed," *id.* ¶ 35. "The form does not advise that by signing a confession of judgment, individuals agree that the Sheriff may file the confession of judgment and it will be entered by the court without any prior notice; that they waive any right to assert defects of jurisdiction, process, or procedure in the judgment so entered; that they waive any substantive defenses to the validity of the debt or the confession of judgment itself; or, that by signing, they forego any right of judicial review." *Id.* ¶ 40.

*Second*, after release, "[i]f an individual is unable to make payments toward the balance purportedly owed to the Sheriff, the Department attempts to make contact by using the contact information listed on the form. When contact attempts are made, notes of those attempts are handwritten on the confession of judgment form." *Id.* ¶ 43. Defendants' policies, practices, and customs involve the use of: (1) phone calls, *id.* ¶ 113; (2) collection letters, *id.* ¶ 115; and (3) final notices, personally served by deputy sheriffs, *id.* ¶ 121. In the case of Ms. Roberts: (1) as reflected in the handwritten notes on Ms. Roberts's first confession of judgment, she informed Defendants "she can't make payments she needs to feed her 3 kids," *id.* ¶ 114; (2) Defendants mailed her a collection letter on August 31, 2022, which stated that her "failure to make [] monthly payment

3

arrangement with the Black Hawk County Sheriff [had] resulted in further enforcement steps," which could "increase the total amount due," *id.* ¶¶ 115, 116; and (3) a deputy sheriff visited her home, "informed Ms. Roberts of the amount that she purportedly owed in jail fees and stated the Department would not bother her as long as she made monthly payments," *id.* ¶ 121.

***Third***, "[t]he Sheriff initiates civil reimbursement claims by using the confessions of judgment it previously prepared" by filing a claim "under chapter 676 of the Iowa Code, using the filing event 'Confession of Judgment.'" *Id.* ¶ 46. "Upon filing, a disposition is entered by a court clerk in the Sheriff's favor for the Confession of Judgment. No judge reviews the claim." *Id.* ¶ 47. "The Department then begins garnishing wages from the alleged debtor." *Id.* ¶ 49. "There is no judicial review of the reimbursement claims filed by the Sheriff." *Id.* ¶ 50.

Defendants' scheme results in a complete absence of process for Ms. Roberts, Mr. Sayers, and other similarly situated individuals. *Id.* ¶ 100. "As a result, the people who purportedly owe these fees have no notice and no opportunity to be heard; thus, they cannot mount a defense against the imposition of this debt. They cannot plead their inability to pay, challenge the validity or amount of the charge, raise issues regarding the execution of the confession of judgment, present arguments that the fine is excessive, assert that other debts have priority, or in any way challenge the confession of judgment." *Id.* ¶ 16.

## PROCEDURAL BACKGROUND

Plaintiff Leticia Roberts filed her initial Complaint on May 13, 2024, asserting claims under the Fourteenth Amendment of the U.S. Constitution. Compl., ECF No. 1 (May 13, 2024). Plaintiffs amended the Complaint as a matter of course pursuant to Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure, adding Mr. Sayers as a Plaintiff. First Amend. Compl., ECF No. 9 (June 7, 2024).

Thereafter, Plaintiffs moved for a preliminary injunction, Pls.' Mot. for Prelim. Inj., ECF No. 11 (July 12, 2024), and Defendants moved to dismiss the First Amended Complaint. Defs.' Pre-Answer Mot. to Dismiss Plfs.' First Amend. Compl., ECF No. 12 (July 16, 2024). The Court heard oral argument on both motions. Hr'g Minutes, ECF No. 28 (Sept. 20, 2024).

On November 1, 2024, the Court granted Defendants' motion to dismiss the First Amended Complaint and denied Plaintiffs' motion for preliminary injunction as moot. The Order concluded that Plaintiffs did not have standing to pursue their claims. As to the elements of the standing analysis, the Court concluded: (a) "plaintiffs have suffered an injury-in-fact," due to "paying part of the jail fees," Order at 9; (b) there was no causation because "defendants' use of confessions of judgment . . . was not the source of plaintiffs' alleged injuries," *id.* at 10; and (c) there was no redressability because "[i]f plaintiffs ultimately prevail on their argument that defendants have collected the fees improperly, nothing would change," *id.* The Order also concluded that Plaintiffs had failed to state a claim under any of their causes of action because: (a) for Count 1, "plaintiffs voluntarily paid defendants the fees" and "Defendants did not deprive plaintiffs of their property," *id.* at 15; (b) for Count 2, "[t]he facts here do not fit a 'conflict of interest' claim, particularly because defendants are not acting in a judicial or quasi-judicial capacity, and because defendants are not making prosecutorial decisions—instead, they are asking for jail fees," *id.* at 17; and (c) for Count 3, "rul[ing] on this claim would amount to an unwarranted advisory opinion rather than a proper declaratory judgment," *id.*

The same day as the Order, the Court entered judgment in favor of Defendants. Judgment in a Civil Action, ECF No. 35 (Nov. 1, 2024).

Plaintiffs' proposed Second Amended Complaint, Ex. A, proposes to strike Counts 2 and 3, and proceed solely on the basis of a denial of procedural due process (Count 1). Additionally,

the Second Amended Complaint clarifies the following:

- Plaintiffs' payments of jail fees were not and are not voluntary, Ex. A ¶¶ 7, 8, 136, 150, 185;

- Defendants' seizure of funds from individuals is unlawful, *id.* ¶ 41;

- Defendants employ other collection methods not authorized by law, *id.* ¶¶ 50–51;

- Plaintiffs did not waive due process, *id.* ¶ 69;

- Plaintiffs rely on sources of income protected from garnishment; *id.* ¶¶ 114, 144, 166, 167;

- The debt Defendants impose causes harm, *id.* ¶¶ 161–65;

- There is a high probability that additional procedural safeguards would protect against further deprivations of property, *id.* ¶¶ 166–72.

- If Plaintiffs were provided due process, the amount of their jail fee debt would be reduced or waived entirely, *id.* ¶¶ 166; and

- Plaintiffs face further imminent risk of injury in that Defendants may file a reimbursement claim using confessions of judgment and obtain the ability to garnish without affording Plaintiffs notice or an opportunity to be heard, *id.* ¶¶ 142, 160, 169.

These proposed amendments cure the issues identified in the Order, including: that Plaintiffs challenge Defendants' policies, practices, and customs as a whole, and not just Defendants' use of confessions of judgment, Order at 10; and Plaintiffs' payments were not voluntary, *id.* at 15.

## ARGUMENT

The Court should vacate the judgment and grant Plaintiffs leave to amend the pleadings. Plaintiffs' proposed Second Amended Complaint will cure the deficiencies identified in the Order. The Court based its standing analysis on causation and redressability, neither of which were briefed by the parties. The Second Amended Complaint makes explicit that the challenged policies, practices, and customs caused—or will cause—the injuries alleged, specifically monetary harm, the absence of process, and the imminent risk of harm. With the regard to the procedural due

process claim—the only cause of action alleged in the Second Amended Compliant—amendment would cure the two holdings from the Order that led to dismissal of that claim: (1) "plaintiffs voluntarily paid defendants the fees," Order at 15; and (2) "[t]he conduct plaintiffs challenge is defendants' use of confession of judgment documents," *id.* at 10. Additionally, the Court has the ability to redress Plaintiffs' injuries through an award of damages and/or by granting declaratory/injunctive relief.

The bar for asserting a procedural due process claim is "relatively modest." *Johnson v. Griffin*, 69 F.4th 506, 510 (8th Cir. 2023) (quoting *Bennett v. Spear*, 520 U.S. 154, 171 (1997)). The proposed amendments in the Second Amended Complaint will allow Plaintiffs to clarify their allegations. Accepting those allegations as true and making all reasonable inferences in favor of Plaintiffs, Plaintiffs meet the standing requirements. Accordingly, the proposed amendments cure any deficiencies identified in the Order and the Court should grant leave to amend the pleadings.

## A. Legal Standard.

Pursuant to Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Rule 15 generally expresses the view that plaintiffs "ought to be afforded an opportunity to test [their] claims on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (summarily reversing denial of leave to amend post-judgment). "Under the liberal amendment policy of Federal Rule of Civil Procedure 15(a), a district court's denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001) (citing *Foman*, 371 U.S. at 182; *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987)). In particular, a "district court's refusal to permit

amendment of the complaint to correct [jurisdictional] defects [is] not in keeping with the liberal amendment policy of" Rule 15. *Sanders*, 823 F.2d at 216–17 (reversing post-dismissal denial of motion to amend the pleadings).

Parties "remain free where dismissal orders do not grant leave to amend to seek vacation of the judgment under Rules 59 and 60 of the Federal Rules of Civil Procedure and offer an amended complaint in place of the dismissed complaint." *Quartana v. Utterback*, 789 F.2d 1297, 1300 (8th Cir. 1986). Rule 59(e) permits the filing of "[a] motion to alter or amend a judgment . . . no later than 28 days after the entry of the judgment." Rule 60(b) states that: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for several enumerated reasons, including "any other reason that justifies relief."[2] Rule 60 permits the Court "to preserve the delicate balance between the sanctity of final judgments and the incessant command of a court's conscience that justice be done in light of all the facts." *Hoover v. Valley West D M*, 823 F.2d 227, 230 (8th Cir. 1987) (quoting *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 515 (8th Cir. 1984)).

While Rules 59 and 60 speak generally of amending or seeking relief from a judgment, when that judgment is entered following a motion to dismiss, courts "may not ignore the Rule 15(a)(2) considerations that favor affording parties an opportunity to test their claims on the merits." *Ryan v. Ryan*, 889 F.3d 499, 508 (8th Cir. 2018); *see also Croft v. Rowley*, 192 F. App'x 582 (8th Cir. 2006) (dismissal on jurisdictional grounds should be without prejudice). In such instances, leave to amend "should be granted liberally." *Quartana*, 789 F.2d at 1300 n. 3.

---

[2] While the Eighth Circuit has acknowledged the apparent tension between Rule 15's liberal standard and the seemingly more restrictive standard under Rules 59 and 60, it has stated that the "Supreme Court's summary reversal of the denial of [post-judgment leave to amend] in" *Foman*, 371 U.S. at 182 "compels" the conclusion "that post-judgment leave to amend may be granted if timely requested." *U.S. ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 823 (8th Cir. 2009).

Post-dismissal leave to amend may be granted where the amended complaint will "cure a jurisdictional defect." *United States v. Mask of Ka-Nefer-Nefer*, 752 F.3d 737, 744 (8th Cir. 2014). Of course, "[s]tanding is a jurisdictional issue." *Disability Support Alliance v. Heartwood Enters., LLC*, 885 F.3d 543, 547 (8th Cir. 2018). Plaintiffs have the burden to establish standing, but "the extent of that burden varies depending on the stage of litigation. At the dismissal stage, the plaintiffs must allege sufficient facts to support a reasonable inference that they can satisfy the elements of standing." *L.H. v. Independence School Dist.*, 111 F.4th 886, 892 (8th Cir. 2024). "At the pleadings stage, general factual allegations suffice to support standing." *Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1108 (8th Cir. 2022). The U.S. Supreme Court has described a plaintiff's pleading burden as "relatively modest." *See Johnson*, 69 F.4th at 510 (quoting *Bennett*, 520 U.S. at 171). Parties opposing amendment, on the other hand, "bear[] a heavy burden to demonstrate that the amendment will create undue prejudice." *In re Lutheran Brotherhood Variable Ins. Prods. Co. Sales Practices Litig.,* No. 99-MD-1309, 2002 WL 31371945, at *6 (D. Minn. Oct. 7, 2002) (citing *Beeck v. Aquaslide'N'Dive Corp.*, 562 F.2d 537, 540 (8th Cir. 1977).

Standing consists of three elements: (1) "injury-in-fact that is concrete, particularized, and actual or imminent;" (2) "the injury was likely caused by the defendant;" and (3) "the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "For standing purposes, [courts] accept as valid the merits of [a plaintiff's] legal claims." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 298 (2022). When a plaintiff brings a procedural due process claim, they satisfy the standing inquiry by alleging some harm and that there were inadequate procedures. *Hughes v. City of Cedar Rapids*, 840 F.3d 987 (8th Cir. 2016).

### B. The Order Erred in Determining Plaintiffs Do Not Have Standing and Granting Leave to Amend Will Allow Plaintiffs to Proceed on the Merits.

The Order erred in determining that Plaintiffs do not have standing to bring a cause of

action for, among other things, a denial of due process (Count 1). In short, that holding is not consistent with Eighth Circuit precedent and the law of standing in general. Granting leave to amend would allow Plaintiffs to explicitly allege what should have been accepted as true and/or reasonably inferred from the First Amended Complaint. The Court should, therefore, grant the motion to allow Plaintiffs to proceed on the merits of their procedural due process claim. *Foman*, 371 U.S. at 182.

As the U.S. Supreme Court has observed, when plaintiffs challenge "government action or inaction"—when they have been "an object of the action (or forgone action) at issue"—"there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992). "[C]ertain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms and monetary harms." *TransUnion*, 594 U.S. at 425. "And those traditional harms may also include harms specified by the Constitution." *Id.* Additionally, a plaintiff can satisfy the standing inquiry by alleging that a "threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (cleaned up).

Plaintiffs propose to amend their complaint to proceed solely on Count 1. With regard to that claim, the Court determined that "defendants' use of confessions of judgment . . . was not the source of plaintiffs' alleged injuries," Order at 10; and "plaintiffs voluntarily paid defendants the fees," meaning that "Defendants did not deprive plaintiffs of their property," *id.* at 15. Plaintiffs' Second Amended Complaint will make clear that Plaintiffs did not make payments voluntarily, Ex. A ¶¶ 136, 158, 185, and Plaintiffs challenge Defendants' policies, practices, and customs as a whole. *id.* ¶¶ 3, 184, 186.

## C. The Second Amended Complaint Adequately Pleads the Elements of Standing.

The Second Amended Complaint asserts a challenge to Defendants' denial of due process. Ex. A ¶¶ 2 ("The scheme . . . relies on the confessions of judgment to pocket money without any process whatsoever."), 112–160 (under the heading "The Sheriff Has Forced Plaintiffs to Pay Jail Fees Without Adequate Due Process"). Defendants' policies, practices, and customs cause Plaintiffs' injuries. *Id.* ¶¶ 3 ("Defendants' policies, practices, and customs deny individuals due process required by Iowa law and the U.S. Constitution."), 112 ("Defendants used those confessions of judgment to require payment of jail fees without due process of law. Defendants' policies, practices, and customs result in the seizure of money and in compelling individuals to pay jail fees."), 184 ("As a matter of policy, the Defendants deprive Plaintiffs and Class Members of their property by demanding payment of jail fees from Plaintiffs and Class Members outside of the statutory process provided in Iowa Code section 356.7."), 186 ("Defendants provide no process by which Plaintiffs and Class Members can challenge the imposition and collection of jail fees."). The Court can redress those injuries by granting declaratory/injunctive relief and monetary damages. *Id.* ¶¶ 190, 191, 193, 194. As a result, Plaintiffs have standing to pursue a procedural due process claim against Defendants.

### 1. *Injury-in-Fact Exists Given Defendants Deny Plaintiffs Due Process, Deprive Them Their Property, and There is Further Risk of Imminent Harm.*

The Order properly concluded that Plaintiffs established injury-in-fact in that they suffered a loss of their property, Order at 9, but did not address the two other harms alleged by Plaintiffs, *see id.* The Court stated that "Plaintiffs argue[d] they have alleged injury-in-fact in two ways[:] . . . they have paid money to defendants . . . [and] they have been denied due process." *Id.* But the Order did not analyze the allegations that (1) Defendants had harmed Plaintiffs by denying them due process, and (2) Plaintiffs faced further imminent risk of harm in that Defendants could

obtain the ability to garnish, without an opportunity to be heard, by filing reimbursement claims using confessions of judgment. The injuries alleged in the Second Amended Complaint—inadequate procedures; deprivation of property; and the imminent risk of a reimbursement claim without process, initiated using a confession of judgment—each suffice to confer standing.

> i. *Plaintiffs' Allegations of the Absence of Process to Challenge Jail Fees Confer Standing.*

When the denial of due process affects "some concrete interest," it is itself actionable. *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). It is not necessary that plaintiffs allege that they would have obtained a different result from a different procedure, *see Lujan*, 504 U.S. at 572 n.7, because "the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimants' substantive assertions, and because of the importance to organized society that procedural due process be observed." *Carey v. Piphus*, 435 U.S. 247, 266 (1978). In any event, "[d]etermining the adequacy of the process is generally a merits question," not one the bears on standing. *See Hughes*, 840 F.3d at 993.

Here, Plaintiffs allege that they have been denied due process to challenge their jail fees. *See, e.g.*, Ex A. ¶ 112. In two recent cases, the Eighth Circuit has held that individuals alleging inadequate procedures have standing to pursue procedural due process claims. *Johnson*, 69 F.4th 506; *Hughes*, 840 F.3d 987. *Hughes*, in particular, is a useful comparison to Plaintiffs' claim. There, several plaintiffs challenged the denial of due process when the City of Cedar Rapids (the "City") enforced citations issued by traffic cameras. *Hughes*, 840 F.3d at 991. The plaintiffs paid traffic citations, and alleged that notices provided by the City contained "confusing information" and the procedures provided were "in direct contravention of Iowa's state law due process requirements." *Hughes v. City of Cedar Rapids*, 112 F. Supp. 3d 817, 833–32 (N.D. Iowa 2015), *rev'd* 840 F.3d 987. Under the City's process, individuals were forced to pay anywhere from $25

to $750, depending on the citation, which several plaintiffs had paid. *Id.* at 827, 828, 835.

Ultimately, the Eighth Circuit held that seven of the nine plaintiffs had standing because they had either been found guilty of violating the ordinance at issue, *Hughes*, 840 F.3d at 993, or because they had paid the fines and alleged "that the procedure is inadequate" as applied to themselves, *id.* at 994.[3] The court observed that "[t]he allegations that the procedure is inadequate . . . sufficiently establishes an injury in fact." *Id.* at 994. Similarly, here, Plaintiffs allege that Defendants fail to provide the procedures required by Iowa law, and in fact provide no process at all, Ex. A ¶¶ 27, 184; and Iowa law does not authorize seizures of money from individuals in jail, especially those who rely on protected sources of income, *id.* ¶¶ 41, 59, 166–68. Put another way, Defendants provide no process whatsoever, much less the process provided in the statute, and Plaintiffs' interests have been impacted by Defendants' policies, practices, and customs. That is enough for standing purposes.

Accordingly, Defendants have caused procedural injuries to Plaintiffs.

### ii. The Deprivation of Property is a Clearly Actionable Injury.

The Order properly concluded that Plaintiffs had established injury-in-fact "by paying part of the jail fees." Order at 9. The Second Amended Complaint alleges Plaintiffs have suffered monetary harm. Defendants have compelled Ms. Roberts to pay $100, and she only made those payments (a) after having failed to pay for over six months, Ex. A ¶ 133; and (b) because "she was fearful about the prospect of further interaction with law enforcement," *id.* ¶ 136. Mr. Sayers had his money taken from him while he was at the jail. Ex. A ¶¶ 150, 152. At a bare minimum, Plaintiffs

---

[3] The Eighth Circuit held two plaintiffs did not have standing because one, Hughes, simply alleged a "fear that, as Vehicle Owner regularly using the roads in Cedar Rapids, he may be subject to civil liability," *Hughes*, 840 F.3d at 992 (cleaned up), and the other, Mazgaj, had no standing because he alleged only "third-party standing on behalf of his wife," *id.*

have established the injury-in-fact prong of the analysis because they suffered monetary harm.

### iii. The Imminent Risk of Harm of Being Subject to a Reimbursement Claim Without an Opportunity to Be Heard Further Establishes Standing.

Finally, the Second Amended Complaint alleges that Plaintiffs face further imminent risk in being subjected to a reimbursement claim, in which Defendants will obtain the ability to garnish wages and bank accounts, without providing Plaintiffs an opportunity to be heard. Plaintiffs previously argued that this conferred standing under the First Amended Complaint, Br. in Opp. to Mot. to Dismiss at 8, ECF No. 22 (Aug. 13, 2024), but the Court did not address this argument. The Second Amended Complaint alleges this harm specifically.

The imminent risk of future harm suffices to convey standing. *Susan B. Anthony List*, 573 U.S. at 158. In particular, "a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder." *Id.* at 159. Here, the "course of conduct" is clear: Plaintiffs are paying towards their jail fees because Defendants are requiring them to do so, albeit at an amount less than what Defendants have demanded. The "affected [] constitutional interest[s]" are in Plaintiffs' property and their due process rights. The process that Plaintiffs should be provided is "proscribed by statute," but Defendants fail to follow that process. And finally, because Plaintiffs have signed confessions of judgment, Defendants retain the ability to file reimbursement claims using those confessions of judgment. Ex. A ¶¶ 142, 160. If that were to happen, Plaintiffs would have no notice nor an opportunity to be heard, *id.* ¶ 55, and Defendants would gain the ability to garnish, *id.* ¶ 57. Plaintiffs would not receive notice until judgment had been entered and their assets garnished. *Id.* By going through this separate reimbursement process using confessions of judgment, Defendants avoid judicial review. *Id.* ¶ 60.

This is not an instance in which the threat of future harm is abstract or conjectural. Rather,

Defendants have noted that Plaintiffs "both fail[ed] to pay under the agreed upon terms," Defs.' Br. in Support of Pre-Answer Mot. to Dismiss Pls.' First Amend. Compl. at 10, ECF No. 12-1 (July 16, 2024), and have explicitly stated that they "still could make that decision" to file a reimbursement claim using a confession of judgment, *see* Hr'g Tr. at 32, ECF No. 36, (Sept. 20, 2024). "Defendants have neither established a long history of disuse nor produced a clear statement by proper authorities that they do not intend to enforce" the confessions of judgment. *281 Care Comm. v. Arneson*, 638 F.3d 621, 628 (8th Cir. 2011). Rather, they have stated they retain the right to do exactly what Plaintiffs fear: file a reimbursement claim at which Plaintiffs will suffer the loss of additional process and further loss of their property without an opportunity to be heard.

### 2. *Defendants' Policies, Practices, and Customs Cause Plaintiffs' Injuries.*

Generally, standing requires "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560. As the Sixth Circuit recently noted, "the causation and redressability requirements are relaxed" when plaintiffs allege procedural injuries. *Rice v. Village of Johnstown, Ohio*, 30 F.4th 584, 593 (6th Cir. 2022).

As stated above, the proposed Second Amended Complaint alleges only a single cause of action for violations of procedural due process, and cures the deficiencies from the Order with regard to that claim. As the Eighth Circuit has held, "inadequate process [is] directly traceable" to Defendants' policies, procedures, and customs. *Hughes*, 840 F.3d at 994. Plaintiffs here assert similar claims in that they allege the "procedure is inadequate," and that they have additionally suffered monetary harm.

There are sufficient allegations that Defendants' policies, practices, and customs caused

each of the alleged injuries.

First, as to the procedural injuries, while the Order addressed the extent to which "the fees [Plaintiffs] paid to defendants [are] fairly traceable to defendants' use of confessions of judgment," Order at 10, it did not address whether Plaintiffs' injuries are fairly traceable to Defendants' policies, practices, and customs as a whole. The Second Amended Complaint clarifies the broader reading of causation warranted by the facts. *See, e.g.*, *Worthy v. City of Phenix City, Ala.*, 930 F.3d 1206, 1214 (11th Cir. 2019) (observing that the district court concluded a complaint narrowly challenged only certain penalties, while the complaint should have been afforded a broader reading). As the Eighth Circuit has held, "[i]nadequate process [is] directly traceable" to policies that result in denial of that process. *Hughes*, 840 F.3d at 994. In *Hughes*, the Eighth Circuit reversed the district court's holding that there was no standing to bring due process claims, holding that "[t]he allegations that the procedure is inadequate . . . sufficiently establishes an injury in fact for Article III standing" and the injury of "inadequate process [was] directly traceable to" the defendants. *Id.* at 994; *see also Doe v. Va. Dep't of State Police*, 713 F.3d 745, 757 (4th Cir. 2013) (finding causation because the plaintiff was "afforded no procedure by which to challenge her reclassification" as a sex offender). The Second Amended Complaint adequately alleges causation, as it makes clear that Plaintiffs challenge "Defendants' policies, practices, and customs" as a whole, Ex. A ¶ 2, and it is those customs that cause the lack of process, *id.* ¶ 3, 112, 184, 186.

Second, the Second Amended Complaint alleges that Defendants' policies, practices, and customs resulted in the deprivation of property. Ex. A ¶ 184. Defendants seized $75 from Mr. Sayers and required him to pay $75 more. *Id.* ¶ 158. Defendants maintain a written policy that results in seizing funds from individuals at the jail to apply to jail fees. *Id.* ¶¶ 36–38. Ms. Roberts paid her jail fees, only after a deputy sheriff visited her home, out of a fear of further interaction

with law enforcement. *Id.* ¶¶ 135, 136. These actions were taken pursuant to Defendants' policies, practices, and customs. *Id.* ¶¶ 26–51. Accordingly, there is clear causation between the challenged actions and the deprivation of Plaintiffs' property.

Third, Defendants' policies, practices, and customs pose an imminent threat of additional, future harm. Ex. A ¶¶ 52–60. Plaintiffs have alleged that they face an imminent risk in that Defendants can file a reimbursement claim against them using a confession of judgment at any time. *Id.* ¶¶ 142, 160. Indeed, they allege that Defendants do not maintain a policy for determining when to file such claims, *id.* ¶ 53, so Defendants can choose to initiate such an action on a whim.

Accordingly, causation is satisfied here as to each of the alleged injuries.

### 3. A Favorable Decision Will Redress Plaintiffs' Injuries.

To satisfy the redressability prong of standing, a plaintiff must show that it is "likely" rather than merely "speculative" that the injury will be "redressed by a favorable decision." *Lujan*, 504 U.S. at 561. "Redressability requires [courts] to examine the 'causal connection between the alleged injury and the judicial relief requested.'" *School of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 1001 (8th Cir. 2022) (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)). Much like causation, redressability is easily satisfied when a plaintiff alleges a violation of procedural due process. *Rice*, 30 F.4th 592. The two forms of relief requested—monetary damages and injunctive/declaratory relief—would redress the injuries alleged.

Declaratory and injunctive relief will redress the due process injuries alleged. Where plaintiffs allege due process violations, declaratory and injunctive relief redresses such an injury. *Wieland v. U.S. Dep't of Health & Human Servs.*, 793 F.3d 949, 957 (8th Cir. 2015) ("[I]t is more than merely speculative that the Wielands' injury [of being required to provide insurance coverage for contraceptives] would be redressed if they were granted the injunctive relief they seek" barring

enforcement of the challenged policy). It is unnecessary that the relief sought will remedy the alleged injuries entirely; even if an injunction falls short of "guarantee[ing] . . . [a] desired outcome, the injunction will have provided constitutionally sufficient redress if it 'removed' a 'barrier' to doing so." *Fowler v. Benson*, 924 F.3d 247, 254 (6th Cir. 2019) (citing *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 261 (1977)).

The Second Amended Complaint's request for declaratory and injunctive relief allows the Court to provide redress. In particular, the Second Amended Complaint seeks: (a) "[a] declaration that Defendants' policies, practices, and customs violate the Fourteenth Amendment;" Ex. A ¶ 193; and (b) "[i]njunctive relief prohibiting the Defendants from seizing money or compelling payment of jail fees without due process of law," *id.* ¶ 194. If the Court were to grant declaratory relief, Defendants could not continue to demand payment from Plaintiffs without due process of law. The injunctive relief Plaintiffs seek would require Defendants to provide *some* process. The due process analysis applies, regardless of "the ultimate outcome of a hearing." *Fuentes v. Shevin*, 407 U.S. 67, 87 (1972). In any event, the Second Amended Complaint alleges that additional process would change Plaintiffs' outcomes. Ex. A ¶¶ 166–72. Therefore, declaratory and/or injunctive relief would provide redress as it would force Defendants to provide due process.

Moreover, damages would redress Plaintiffs' injuries. At a minimum, nominal damages for constitutional violations "independently provide redress." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 141 S. Ct. 72, 801 (2021). Decided the same term as *TransUnion*, *Uzuegbunam* clearly establishes that nominal damages available for constitutional violations suffice because they "affect the behavior of the defendant towards the plaintiff" and thus independently provide redress." *Id.* (cleaned up) (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)). Plaintiffs also seek compensatory damages, Ex. A ¶ 190, which would compensate Plaintiffs for the amounts

wrongfully and unlawfully seized and collected by Defendants. *Brewer v. Chauvin*, 938 F.2d 860, 863 (8th Cir. 1991). Both nominal and compensatory damages would provide redress in making Plaintiffs whole. *See also Hughes*, 840 F.3d at 994 ("If the court awards damages, their claims are redressed.").

Because the Second Amended Complaint seeks damages and injunctive/declaratory relief, the Court should grant the motion.

### D. This Motion Is Not Unduly Delayed, the Result of Bad Faith, or Overly Prejudicial to Defendants.

In considering a post-judgment motion for leave to amend, in addition to the tendency for the proposed amendments to cure any deficiencies, the Court is also to consider whether the motion is unduly delayed, the result of bad faith by the movant, or prejudicial to the non-moving party. *Roberson*, 241 F.3d at 995. None is present here, and Plaintiffs have shown that the amendments will cure the deficiencies identified in the Order, such that the Court should grant the motion.

First, there is no undue delay here. Plaintiffs have filed the motion within the 28-day deadline under Rule 59(e). Moreover, the scheduling order entered in this case provided November 29th as the deadline to move to amend the pleadings. Scheduling Order & Discovery Plan, ECF No. 26 (Sept. 6, 2024). Under both the Rules of Civil Procedure, and the Court's own schedule for this case, this motion is timely.

Second, Plaintiffs have not acted in bad faith. Bad faith may exist when a party acts with "dishonesty of belief, purpose, or motive." *Smith v. RW's Bierstube, Inc.*, No. 17-cv-1866, 2018 WL 8754184, at *7 (D. Minn. Jan. 12, 2018). There is a clear reason Plaintiffs bring this motion now: because the Order dismissed Plaintiffs' claims on the basis of standing and Plaintiffs wish to proceed to the merits of their claims. *Foman*, 371 U.S. at 182. The proposed amendments clarify the bases of standing. Accordingly, there is no bad faith here.

Third, granting the motion will result in minimal prejudice to Defendants, especially in comparison to the prejudice to Plaintiffs if the motion is not granted. "The burden of proof of prejudice is on the party opposing the amendment." *Roberson*, 241 F.3d at 995. "Any prejudice to the nonmovant must be weighed against the prejudice to the moving party by not allowing the amendment." *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998). Amendments that "involve new theories of recovery and impose additional discovery requirements" may be prejudicial, *id.*, whereas an amendment "based on facts already known or available to both sides" is not, *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000). On balance, the prejudice to Plaintiffs in denying leave to amend is significantly greater than any prejudice to Defendants if the motion is granted. Plaintiffs will not be able to litigate the merits of their claims if leave to amend is not granted. *Foman*, 371 U.S. at 182. Defendants, on the other hand, face little prejudice as they have been on notice of the allegations in the Second Amended Complaint since they were originally pleaded. Compl., ECF No. 1 (May 13, 2024). The first cause of action has remained the same since then, and Plaintiffs propose to proceed on that basis alone. None of the "classic indicia of prejudice exist:" Plaintiffs have timely sought the motion and because the "additional allegations concern facts relating to [those] that are the subject of the original complaint," Defendants "can easily investigate those facts." *Smith*, 2018 WL 8754184, at *7. Simply put, the prejudice to Defendants is minimal.

Accordingly, given that the proposed amendments will cure the issues identified in the Order, and the other considerations favor amendment, the Court should grant Plaintiffs' motion.

## CONCLUSION

For the reasons provided above, the Court should grant the motion, vacate the judgment, and grant Plaintiffs leave to file the Second Amended Complaint.

RESPECTFULLY SUBMITTED AND DATED this 29th day of November, 2024.

By: _Charles Moore_____

Charles Moore
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
T: (202) 861-5226
cmoore@publicjustice.net
(admitted *Pro Hac Vice*)

Rita Bettis Austen
Thomas Story
Shefali Aurora
ACLU of Iowa Foundation, Inc.
505 Fifth Ave., Suite 808
Des Moines, IA 50309-2317
T: (515) 207-0567
F: (515) 243-8506
rita.bettis@aclu-ia.org
thomas.story@aclu-ia.org
shefali.aurora@aclu-ia.org

Leslie A. Bailey
Public Justice
475 14th Street, Suite 610
Oakland, California 94612
T: (510) 622-8203
lbailey@publicjustice.net
(admitted *Pro Hac Vice*)

Thomas P. Frerichs
Frerichs Law Office, P.C.
106 E. 4th Street, P.O. Box 328
Waterloo, IA 50704-0328
T: (319) 236-7204
F: (319) 236-7206
tfrerichs@frerichslaw.com

Brandon R. Underwood
Kelcy Whitaker
Michael D. Currie
Sarah Golwitzer
Fredrikson & Byron P.A.
111 East Grand Ave., Suite 301
Des Moines, IA 50309-1884
T: (515) 242-8900
F: (515) 242-8950
bunderwood@fredlaw.com
kwhitaker@fredlaw.com
mcurrie@fredlaw.com
sgolwitzer@fredlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on November 29, 2024, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which together with the production and transmission of a Notice of Electronic Filing (NEF) by the CM/ECF system, constitutes filing of the document and service of the document on all persons who have appeared in the case and are CM/ECF system registrants.

Dated: November 29, 2024        *s/ Charles Moore*
                                      Charles Moore